[No. A117182. First Dist., Div. Three. Mar. 27, 2008.]

TSMC NORTH AMERICA et al., Plaintiffs and Appellants, v.
SEMICONDUCTOR MANUFACTURING INTERNATIONAL
CORPORATION et al., Defendants and Respondents.

582

## COUNSEL

Keker & Van Nest, Jeffrey R. Chanin and Steven A. Hirsch for Plaintiffs and Appellants.

Wilson Sonsini, Goodrich & Rosati, David Steuer, Colleen Bal and Michael A. Berta for Defendants and Respondents.

## OPINION

**McGUINESS, P. J.**—This appeal challenges the denial of a motion for an antisuit injunction. Appellants TSMC North America, Taiwan Semiconductor Manufacturing Company, Ltd. (TSMC), and Wafertech L.L.C. sought an order prohibiting respondents Semiconductor Manufacturing International Corporation, Semiconductor Manufacturing International (Shanghai) Corporation, and Semiconductor Manufacturing International (Beijing)

Corporation (collectively, SMIC) from litigating claims they brought against TSMC in the People's Republic of China (PRC or China). Relying heavily on considerations of international comity and judicial restraint, the trial court declined to enjoin these foreign proceedings. We affirm the order.

## BACKGROUND

In 2003 and 2004, appellants sued SMIC in California's federal and state courts and before the United States International Trade Commission alleging, among other things, patent infringement and trade secret misappropriation. The parties resolved these actions in 2005 in a comprehensive settlement agreement (Settlement Agreement). The Settlement Agreement included two provisions relevant to our discussion here: (1) an agreement that "the substantive laws of California shall apply to any dispute arising out of this Agreement"; and (2) an agreement to submit "to personal jurisdiction and venue of the California Courts with regard to any dispute arising out of the interpretation, enforcement or breach of this Agreement."

In July 2006, appellants advised SMIC they believed SMIC had breached the Settlement Agreement. After a meet-and-confer process, the parties executed another agreement on August 10, 2006 (August 10 Agreement). Like the Settlement Agreement, this contract required that disputes arising out of or related to it be governed by California law, and it recited that the parties agreed to personal jurisdiction and venue in the California Superior Court, Alameda County, for any such disputes.

Eventually, negotiations over whether SMIC had breached the Settlement Agreement stalled, and on August 30, 2006, appellants filed an amended complaint in the Alameda County Superior Court for breach of contract, breach of promissory note obligations and trade secret misappropriation. On September 12, 2006, SMIC cross-complained for breach of contract and breach of the implied covenant of good faith and fair dealing. In support of these claims, the cross-complaint alleges that appellants initiated the present lawsuit and previous lawsuits with the purpose of harming SMIC's business and reputation, failed to negotiate in good faith in accordance with the meet-and-confer requirements of the Settlement Agreement, and made a concerted effort to discredit SMIC by making unfair and misleading accusations about the company to the media.

Later in 2006, SMIC filed its own civil complaint regarding these matters in the Beijing People's High Court (Beijing court). Although this complaint initially named all of the appellants as defendants, it is now directed solely against TSMC, a Taiwanese company. The PRC complaint asserts causes of action for defamation and unfair competition under Chinese law based on allegations that TSMC (1) filed the California lawsuit without cause and launched a worldwide publicity campaign about the lawsuit to defame SMIC's reputation; (2) falsely accused SMIC in the PRC media of, among other things, breaching the Settlement Agreement and infringing appellants' rights; and (3) disseminated false and misleading information to the PRC media and public suggesting that TSMC had successfully proven the allegations in its California complaint. The PRC complaint requests that TSMC be ordered "to immediately cease their unfair competition and infringement on plaintiffs' commercial reputation, good name, and commodity reputation, in order to eliminate the bad effects caused to the plaintiffs by the defendants' unfair competition and infringement . . . ."

On January 23, 2007, appellants filed a motion for an antisuit injunction "ordering SMIC, and all persons acting in concern [sic] with it, to cease proceeding with or participating in, directly or indirectly, its action filed in the Beijing [court], or any other action in the [PRC] that is subject to the parties [sic] choice of law and forum agreements, or that should have been pleaded as a compulsory Cross-complaint in this action."

On March 9, 2007, the trial court issued a detailed order denying the motion. Appellants filed this appeal and sought an immediate injunction under Code of Civil Procedure section 923 barring SMIC from pursuing Chinese law claims in the Beijing court. After obtaining opposition, we denied this petition on May 2, 2007, and on May 23, 2007, the Supreme Court denied appellants' petition for review of our order.

## DISCUSSION

### I. *Standard of Review*

The sole issue before us in this appeal is whether the trial court erred in denying appellants' request for a so-called antisuit injunction—i.e., an order enjoining SMIC from prosecuting its claims against TSMC in the PRC action. " ' "The law is well settled that the decision to grant [a restraining order] rests in the sound discretion of the trial court." [Citation.] "A trial

court will be found to have abused its discretion only when it has ' "exceeded the bounds of reason or contravened the uncontradicted evidence." ' " [Citation.] "Further, the burden rests with the party challenging the [trial court's order] to make a clear showing of an abuse of discretion." [Citation.]' [Citation.]" (*Biosense Webster, Inc. v. Superior Court* (2006) 135 Cal.App.4th 827, 834 [37 Cal.Rptr.3d 759].) "When the trial court denies the requested relief, the plaintiff bears the burden, as appellant, of overcoming the presumption of correctness which attends the challenged ruling." (*Citizens for Better Streets v. Board of Supervisors* (2004) 117 Cal.App.4th 1, 6 [11 Cal.Rptr.3d 349].)[1]

II. *Trial Court's Findings and Conclusions*

After determining that SMIC's claims in the PRC action "arise out of" or are "related to" the Settlement Agreement and August 10 Agreement, the trial court considered the legal import of the provisions regarding forum and choice-of-law in these agreements. The court concluded the forum selection provisions are permissive, rather than mandatory, in nature. (See *Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 359 [71 Cal.Rptr.2d 523] [if "a clause merely provides for submission to jurisdiction, and does not expressly mandate litigation exclusively in a particular forum . . ." it is permissive and not mandatory].) Although the choice-of-law provisions are mandatory, because they expressly require the application of California law, the trial court rejected appellants' argument that this choice-of-law meant SMIC's claims had to be litigated in California. The court proceeded to weigh several factors to determine whether it would be appropriate to enjoin the PRC action.

First, the court observed SMIC was not asking the Beijing court to enjoin the California case. Although decisions in the PRC action could potentially have preclusive effect in California, this possibility alone did not justify an antisuit injunction. Second, the court found SMIC's claims in the PRC action

---

[1] Appellants' insistence that de novo review is required because issuance of the injunction depends on a question of law is unpersuasive because appellants have identified no such legal issue. Both sides agree on the standards for issuance of an antisuit injunction; appellants simply dispute the weight the trial court gave to relevant considerations such as comity, potential impacts of the PRC case on the court's jurisdiction and appellants' constitutional rights, and other concerns. Such a weighing of numerous factors based on disputed facts is a classic exercise of judicial discretion that we may overturn only based upon a showing of abuse. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 408 [58 Cal.Rptr.3d 527]; see also *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999 [90 Cal.Rptr.2d 236, 987 P.2d 705] [abuse of discretion is appropriate standard of review for issuance of preliminary injunction].)

should be governed by California law because they arise out of or are related to the settlement agreements. SMIC had pleaded those claims under Chinese law, but the Beijing court could choose to apply California law consistent with the parties' contracts. If the Beijing court decided not to do so, however, application of Chinese law could violate important California public policies favoring enforcement of choice-of-law provisions, opposing liability for statements made in the course of litigation, and opposing tort recovery for breach of contract. Third, in regard to appellants' argument that Taiwanese export control laws prohibiting transfer of certain semiconductor technology to mainland China would inhibit TSMC's ability to defend itself in the PRC action, the trial court noted Taiwanese law might indeed "interfere" with the conduct of the PRC action, and it remarked this issue was "a legitimate concern." However, the court also found significant evidence showed the Beijing court would provide due process to TSMC. Fourth, SMIC's claims in the PRC action were compulsory cross-claims which had, in fact, been asserted in the California case. The court remarked that SMIC's pursuit of similar claims in different forums was "troublesome" but not a sufficient basis for an injunction. Finally, the trial court accorded no significance to the fact that the California action was filed first, or that it was procedurally slightly more advanced than the PRC action, given that both actions had been filed and were in their early stages. Further, the trial court found that access to evidence and witnesses and use of the Chinese language "marginally favors" prosecution of SMIC's claims in the PRC.

Weighing all of these factors and considerations of comity and judicial restraint, the trial court concluded appellants had not met their burden of showing exceptional circumstances to justify an antisuit injunction. The court explained: "The 'tipping point' in the analysis is this Court's confidence that the Beijing [court] will give effect to the Settlement Agreement and the August 10 Agreement, evaluate whether the claim in the PRC action arose out of or relate to those contracts and, if so, either apply California law to the claims asserted or stay the claims and direct SMIC to pursue those claims in this California Court."

III. *Legal Framework:* Advanced Bionics

█ California courts unquestionably have the power under certain circumstances to issue antisuit injunctions to restrain litigants from pursuing lawsuits in other states or foreign nations. (*Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 707–708 [128 Cal.Rptr.2d 172, 59 P.3d 231] (*Advanced Bionics*); *Spreckels v. Hawaiian Com. etc. Co.* (1897) 117 Cal. 377, 378 [49 P. 353]; *Biosense Webster, Inc. v. Superior Court, supra,* 135 Cal.App.4th at p. 836.) However, this power must be used "sparingly." (*Advanced Bionics, supra,* 29 Cal.4th at p. 705.) "A parallel action in a

different state presents sovereignty concerns that compel California courts to use judicial restraint when determining whether they may properly issue a [temporary restraining order] against parties pursuing an action in a foreign jurisdiction." (*Id.* at p. 707.) "After all, even though an international antisuit injunction operates only against the parties, it effectively restricts the jurisdiction of a foreign sovereign's courts." (*Quaak v. Klynveld Peat Marwick Goerdeler* (1st Cir. 2004) 361 F.3d 11, 17.)

In *Advanced Bionics, supra,* 29 Cal.4th 697, a case both sides rightly regard as central to the issues now before us, our Supreme Court discussed the considerations a trial court must weigh in deciding whether to enjoin a party from litigating in a foreign jurisdiction. The facts in *Advanced Bionics* were similar in certain respects to those now before us. Upon joining a Minnesota corporation, an employee signed an agreement that contained a covenant not to compete and required that all claims regarding the agreement be decided under Minnesota law. (*Id.* at pp. 700–701.) When the employee left and accepted employment with a California company, this new employer immediately filed an action for declaratory relief in a California court, alleging the Minnesota contract's noncompetition clause violated California law and public policy and was therefore void. (*Id.* at p. 701.) Two days later, the Minnesota company responded with a breach of contract and tortious interference suit in Minnesota state court against the former employee and his new California employer. (*Id.* at pp. 701–702.) After some procedural wrangling, the California employer successfully obtained a temporary restraining order (TRO) in the California lawsuit that prevented the Minnesota company " 'from taking any action whatsoever, other than in this Court, to enforce [its covenant not to compete] . . . , including but not limited to making any appearance, filing any paper, participating in any proceeding, posting any bond, or taking any other action in the second-filed [Minnesota] lawsuit . . . .' " (*Id.* at pp. 702–703, fn. omitted.)

Although the Court of Appeal upheld the TRO, concluding California should decide the dispute because the case had been filed here first and California law should apply, the Supreme Court disagreed. (*Advanced Bionics, supra,* 29 Cal.4th at pp. 703–704, 707–708.) The high court explained that although injunctions may be had to prevent " 'unseemly conflict' " between California courts in multiple proceedings, "judicial restraint takes on a more fundamental importance" when one of the cases has been filed in a different state. (*Id.* at p. 706.) "A parallel action in a different state presents sovereignty concerns that compel California courts to use judicial restraint when determining whether they may properly issue a TRO against parties pursuing an action in a foreign jurisdiction." (*Id.* at p. 707.) In explaining the importance of judicial restraint, the court cited approvingly decisions from other states holding that differences in substantive law do not alone justify a court's order enjoining proceedings in another state. (*Id.* at p. 705.) Nor does the principle of judicial

restraint permit a court to enjoin foreign proceedings based on a concern that a judgment in one of the proceedings could have a preclusive effect on the other case. (*Id.* at p. 706.)

■ In addition to judicial restraint, the Supreme Court also observed that the principle of comity supported its conclusion. (*Advanced Bionics, supra,* 29 Cal.4th at p. 707.) The court defined comity as a situation in which " ' " 'the laws of one state are . . . permitted by the courtesy of another to operate in the latter for the promotion of justice, where neither that state nor its citizens will suffer any inconvenience from the application of the foreign law. This courtesy, or comity, is established, not only from motives of respect for the laws and institutions of the foreign countries, but from considerations of mutual utility and advantage.' " . . .' [Citations.]" (*Ibid.*) The principle of comity, or courtesy between courts of different sovereignties, led the high court to reject an argument that the Minnesota proceeding should be enjoined because the California suit was filed first. (*Ibid.*) Noting that filing order does not matter when the courts involved are not of the same sovereignty, the court observed, " 'Restraining a party from pursuing an action in a court of foreign jurisdiction involves delicate questions of comity and therefore "requires that such action be taken only with care and great restraint." ' [Citation.]" (*Ibid.*)

Having discussed the principles of judicial restraint and comity, and having stressed the fundamental importance of these principles when litigants are pursuing actions in courts of separate sovereignty, the Supreme Court concluded the trial court erred in issuing a TRO. (*Advanced Bionics, supra,* 29 Cal.4th at pp. 707–708.) The court held that "enjoining proceedings in another state requires an exceptional circumstance that outweighs the threat to judicial restraint and comity principles." (*Id.* at p. 708.) However, the court gave no indication of what such an "exceptional circumstance" might be to justify an antisuit injunction.

IV. *No "Exceptional Circumstance" Requires Issuance of an Injunction Here*

Appellants do not dispute that the Supreme Court's *Advanced Bionics* decision is the controlling California authority regarding the propriety of injunctions against foreign proceedings. They also agree with, or accept, many of the trial court's factual findings. However, appellants vehemently disagree with the trial court's application of *Advanced Bionics* because they claim the facts of this case establish four exceptional circumstances that outweigh notions of international comity and judicial restraint. Specifically, appellants contend (1) the PRC proceedings will violate TSMC's constitutional rights; (2) an antisuit injunction is necessary to protect the trial court's jurisdiction and the effectiveness of its rulings; (3) SMIC filed the PRC action

to evade important California public policies; and (4) an antisuit injunction is necessary to enforce SMIC's promise not to seek invocation of non-California law to resolve disputes arising under the Settlement Agreement and August 10 Agreement.

Although appellants roundly assert that unspecified "courts" have identified these four circumstances as situations "in which 'comity' is entitled to little or no weight," they cite no authority for this claim. Nevertheless, we consider whether any of these arguments constitutes an "exceptional circumstance" sufficient to outweigh the fundamental notions of judicial restraint and comity. (*Advanced Bionics, supra*, 29 Cal.4th at pp. 707–708.)

## A. *Protection of TSMC's Constitutional Rights*

Urged as a bedrock principle in appellants' briefing to this court is the notion that an antisuit injunction is appropriate whenever a party alleges a foreign action may curtail its constitutional rights. Yet the argument is curiously lacking in support from case law. The only authority appellants cite for their "constitutional rights" theory is the *Advanced Bionics* decision, in which, appellants represent, "the Court held that comity does not extend to situations in which a foreign court is being asked to take actions that would have unconstitutional domestic consequences." Even a cursory reading of the case reveals the court held no such thing. In explaining what "comity" means, the majority included a quotation from *Estate of Lund* (1945) 26 Cal.2d 472, 489 [159 P.2d 643] (*Lund*) regarding the extraterritorial operation of state laws. (*Advanced Bionics, supra*, 29 Cal.4th at p. 707.) *Lund*, in turn, quoted this sentence from a 1940 opinion of the United States Supreme Court: " 'The mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids.' [Citation.]" (*Lund, supra*, 26 Cal.2d at p. 489, quoting *Osborn v. Ozlin* (1940) 310 U.S. 53, 62 [84 L.Ed. 1074, 60 S.Ct. 758].)

Read in context, the statement quoted from *Lund* merely describes when judicial scrutiny is warranted for state laws that have effects outside a state's borders. Nothing in *Advanced Bionics*—or *Lund*, or any other decision we have come across—supports appellants' novel argument that a court must ignore its guideposts of comity and judicial restraint every time a litigant complains that a foreign proceeding threatens to infringe upon a constitutional right. Obviously, such allegations are easily made. Appellants' readiness to disregard the principles of judicial restraint and comity not only lacks support in the law, but also contradicts the Supreme Court's directive that these principles are of "fundamental importance" when the trial court is asked to enjoin a foreign proceeding. (*Advanced Bionics, supra*, 29 Cal.4th at p. 706.)

Moreover, even if we were inclined to accept appellants' theoretical "exception," we would not find it satisfied here because the Beijing court has not taken, and has not been asked to take, any action that is forbidden by our state or federal Constitution.

Appellants first attempt to characterize the PRC action as an attempt by SMIC to secure an unconstitutional "prior restraint" on TSMC's speech and petitioning activity. In so claiming, appellants assert that "Chinese law apparently permits . . . judicial censorship." Appellants cite no evidence in the record to support this characterization of the Chinese courts, and we refuse to take their word for it.[2] The mere existence of the PRC action in no way restrains TSMC's rights to free speech or petition. The Beijing court has not issued a ruling that actually infringes on TSMC's constitutionally protected rights to speech or petition, and we will not speculate that such ruling is forthcoming based merely on appellants' criticism of the Chinese legal system.

Moreover, it is worth noting that the claims in the PRC action challenge TSMC's allegedly *false and misleading statements*, rather than any alleged breaches of the parties' agreements. The PRC complaint alleges, for example, that TSMC published and republished false and misleading statements in the PRC media suggesting that SMIC had violated the Settlement Agreement and infringed upon appellants' rights, and that such violations had already been established as true by a court of law. SMIC's prayer for injunctive relief, which appears to be the source of appellants' concern, asks the Beijing court to order TSMC to cease its alleged unfair competition and defamation of SMIC. If the basis for it is proven, such an injunction would not be improper under American law because neither the United States Constitution nor the California Constitution protects false or misleading statements. (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1147–1148 [57 Cal.Rptr.3d 320, 156 P.3d 339].) Accordingly, should the PRC court ultimately decide that TSMC indeed made false and misleading statements, and that their publication or re-publication should be enjoined, such a ruling would not, even under California standards, violate TSMC's rights to free speech.[3] (See 40 Cal.4th at p. 1148 ["an injunction issued following a trial that determined that the

---

[2] The only support appellants offer for their attacks on the Chinese legal system is a 2006 State Department report, which they say is available on the Internet. This report is not and has never been part of the record on appeal, and we disapprove of appellants' efforts to place its conclusions before us as if they were on a par with the evidence the trial court actually considered.

[3] Rather than pointing to any evidence regarding the Chinese law of defamation, appellants assert: "[SMIC] apparently believe[s] that [it] will be able to enjoin any statement that hurts [its] reputation or business—true or not." What either party might believe the Beijing court will do is irrelevant. Mere speculation that the court might at some point violate TSMC's right to free speech is not a sufficient basis for issuance of an antisuit injunction.

defendant defamed the plaintiff that does no more than prohibit the defendant from repeating the defamation, is not a prior restraint and does not offend the First Amendment"].)

Appellants next claim that having to litigate SMIC's claims in Beijing will deprive TSMC of due process of law because Taiwanese law will inhibit the company's ability to defend itself. Specifically, the export control laws of Taiwan prohibit Taiwanese companies, including TSMC, from sending certain semiconductor technology into mainland China, and appellants claim these laws will prevent TSMC from offering evidence in Beijing that is vital to its defense.

The trial court found that Taiwanese export control laws "might" interfere with the PRC action, and we agree it remains to be seen whether these laws will hinder TSMC's ability to defend itself. The parties submitted conflicting evidence in this regard: While appellants' expert asserted it would be a violation of Taiwanese export control laws to bring prohibited categories of information into the PRC for any purpose, SMIC's expert opined that Taiwanese law does not restrict an individual's right to take such information into the PRC for personal use or for litigation purposes.[4] In addition, even appellants' expert acknowledged that TSMC can seek an exemption under Taiwanese export control laws, although he believed the chance of an exemption being granted was "remote."

At this early stage of the proceedings, any prediction about the effect Taiwanese export control laws may have on TSMC's due process rights in China would be purely speculative and not, in our view, a sufficient basis to support issuance of an antisuit injunction. Indeed, as the trial court observed, even United States litigants may be reasonably restrained from presenting evidence—no matter its significance—where a court determines national security or other state interests are of greater importance. (See, e.g., *Union Bank of California v. Superior Court* (2005) 130 Cal.App.4th 378, 390 [29 Cal.Rptr.3d 894] [restricting discovery of certain bank reports prepared pursuant to federal antimoney laundering laws]; Evid. Code, § 1045 [restricting discovery of police officers' personnel records].)

More generally, to the extent appellants continue to dispute it, substantial evidence supports the trial court's finding that TSMC will receive due process

---

[4] SMIC also claims TSMC's discovery responses indicate it has already provided the supposedly protected technology to several Chinese companies. Appellants' discovery responses are not in the appellate record, however, and they are not a proper matter for judicial notice. (Evid. Code, §§ 451, 452.) SMIC's request that we take judicial notice of these discovery responses, which have been filed in this court under seal, is therefore denied. We also deny appellants' November 8, 2007, request for judicial notice of recent trial court rulings, which appear to be irrelevant to the issues to be decided on appeal.

in the PRC action. SMIC submitted declarations from several experts in PRC law, who opined that the PRC Constitution and civil procedure laws provide for judicial independence, respect for the rule of law, equal treatment to litigants of all nationalities, the collection and presentation of evidence, direct and cross-examination of witnesses, and a right of appeal. Disproving the notion that foreign corporations like TSMC are treated unfairly in the PRC, SMIC submitted evidence demonstrating, based on PRC court records, that foreign corporations have won the majority of intellectual property cases filed in the Beijing court in recent years, particularly since the PRC gained membership into the World Trade Organization. Finding no compelling evidence to the contrary, the trial court stated it would "presume that the Beijing [court] is capable of performing the traditional judicial function and that its results are not driven by political or economic interests." In deference to the principles of judicial restraint and comity, and based upon the evidence and findings below, we too must presume the Beijing court will provide fair procedures to TSMC.

### B. *Protection of the Trial Court's Jurisdiction and Rulings*

Next, appellants contend an antisuit injunction is necessary to protect the trial court's jurisdiction and the effectiveness of its rulings, which appellants insist are threatened by the PRC action. This argument is not based on the majority opinion in *Advanced Bionics*, but rather on language from a concurring opinion authored by Justice Moreno. The concurrence described two approaches to antisuit injunctions that have been adopted by the federal circuit courts. (*Advanced Bionics, supra*, 29 Cal.4th at pp. 712–714 (conc. opn. of Moreno, J.).) Under the "restrictive approach," which Justice Moreno favored, "courts should only issue antisuit injunctions in two situations: if 'necessary to protect the jurisdiction of the enjoining court, or to prevent the litigant's evasion of the important public policies of the forum.' [Citation.]" (*Id.* at p. 714 (conc. opn. of Moreno, J.).)[5] The concurrence stressed that "circuits that follow the restrictive approach 'have interpreted these exceptions narrowly.' [Citation.]" (29 Cal.4th at p. 714 (conc. opn. of Moreno, J.).)

Although it offers a thoughtful analysis of federal law on antisuit injunctions, Justice Moreno's opinion did not express the views of a majority

---

[5] Under the "liberal approach" adopted elsewhere, an antisuit injunction may issue simply upon a showing that there is parallel litigation in the foreign forum causing unwarranted duplication of effort, inconvenience, expense and vexation. (E.g., *Kaepa, Inc. v. Achilles Corp.* (5th Cir. 1996) 76 F.3d 624, 627.) The concurrence faulted this approach for giving insufficient attention to concerns of comity. (*Advanced Bionics, supra*, 29 Cal.4th at p. 714 (conc. opn. of Moreno, J.).)

of the court.[6] As such, we are not bound to follow it. (*Rosato v. Superior Court* (1975) 51 Cal.App.3d 190, 211 [124 Cal.Rptr. 427] ["dicta by a concurring justice . . . is not binding and does not constitute the holding of the court"].) Indeed, the majority arguably adopted an even stricter standard than the federal courts' "restrictive approach." In considering the possibility that a foreign action could proceed to judgment first—and then preclude further proceedings by application of res judicata—the *Advanced Bionics* majority did not endorse the issuance of an antisuit injunction for a California court to protect its jurisdiction. (*Advanced Bionics, supra*, 29 Cal.4th at p. 706.) On the contrary, although the trial court had found there was a substantial chance the defendant "would 'go to the Minnesota court [and] attempt to undercut the California court's jurisdiction' " (*id.* at p. 702), the Supreme Court concluded no exceptional circumstance justified the order enjoining the Minnesota proceedings (*id.* at pp. 707–708).

■ Even if we were to follow the "restrictive approach" described in Justice Moreno's *Advanced Bionics* concurrence, we would not agree with appellants' claim that an antisuit injunction is necessary to preserve the superior court's jurisdiction. This justification for enjoining foreign proceedings has been construed extremely narrowly. (See *Advanced Bionics, supra*, 29 Cal.4th at pp. 714–716 (conc. opn. of Moreno, J.).) "Typically, only two scenarios threaten a court's jurisdiction. The first is when the concurrent proceedings are in rem or quasi in rem. [Citation.]" (*Id.* at p. 715 (conc. opn. of Moreno, J.).) The second occurs when "a foreign court in an in personam action . . . attempt[s] to carve out exclusive jurisdiction over the matter." (*Ibid.*) "[T]he possibility that a foreign court may favor the party filing the foreign suit is not a threat to the jurisdiction of the United States courts. [Citation.] Even 'the possibility that a ruling of a foreign court might eventually result in the voluntary dismissal of the claim before the United States court' does not threaten the United States court's jurisdiction. [Citation.]" (*Ibid.*)

The first scenario—in rem proceedings—is obviously inapplicable here, and the second scenario is not borne out by the evidence. Beyond alarmist predictions, appellants have presented no evidence of any attempt by the Beijing court to carve out exclusive jurisdiction over the parties' disputes. Such a threat to jurisdiction justifying an antisuit injunction requires proof that the foreign proceedings were "solely designed to rob the court of its jurisdiction." (*Laker Airways v. Sabena, Belgian World Airlines* (D.C. Cir. 1984) 731 F.2d 909, 931.) Appellants have provided no evidence of such a nefarious purpose; on the contrary, SMIC expressly represents that it will *not*

---

[6] No other justice joined Justice Moreno's opinion; however, Justice Brown stated in a separate concurrence that she "agree[d] with most of" it. (*Advanced Bionics, supra*, 29 Cal.4th at p. 708 (conc. opn. of Brown, J.).)

ask the PRC court to enjoin the California litigation. SMIC has also pointed out legitimate reasons why it filed the PRC action. For example, both SMIC, a Chinese company, and TSMC, a Taiwanese company, operate in mainland China; the PRC tort claims are directed at harm occurring in China, among other places; and, as the trial court found, relevant witnesses and evidence are located in China, making China a marginally more convenient forum than California for resolving the disputes.

██ Nor have appellants shown that any action by the Beijing court has undermined the effectiveness of the trial court's rulings with respect to important California public policies or other matters. The only significant ruling in the PRC action brought to our attention is an order denying TSMC's objections to the court's jurisdiction.[7] Appellants both exaggerate and misrepresent the meaning of this order when they lament that the ruling "establishes that the Beijing case is now going forward, without question; that choice-of-law arguments will get nowhere in that proceeding; that the Beijing court could not care less about the parallel proceeding occurring in California Superior Court; and that the Beijing court has no intention of conforming to international or foreign due-process standards." In reality, the Beijing court's order finding it had jurisdiction over TSMC is hardly surprising given allegations that TSMC conducted significant business in mainland China and that the company published its allegedly defamatory articles about SMIC in Chinese journals. The Beijing court made no finding about choice of law. It simply observed that TSMC's arguments about the California lawsuit were not relevant to the jurisdictional question before the court. This observation was reasonable, in our view, and does not constitute evidence of an attempt to usurp California's jurisdiction. Nor is an injunction justified by the fact that the PRC action "is now going forward" and may reach judgment before the litigation in California. "The possibility that one action may lead to a judgment first and then be applied as res judicata in another action 'is a natural consequence of parallel proceedings in courts with concurrent jurisdiction, and not reason for an injunction.' [Citation.] '[T]he possibility of an "embarrassing race to judgment" or potentially inconsistent adjudications does not outweigh the respect and deference owed to independent foreign proceedings.' [Citation.]" (*Advanced Bionics, supra*, 29 Cal.4th at p. 706.)

### C. *Protection of California's Public Policies*

Turning to the second situation identified in Justice Moreno's *Advanced Bionics* concurrence as a basis for permitting an antisuit injunction, appellants

---

[7] We take judicial notice of the Beijing court's jurisdictional ruling dated July 30, 2007, and the parties' related filings, pursuant to Evidence Code section 452, subdivision (h). (See *In re Marriage of Taschen* (2005) 134 Cal.App.4th 681, 688, fn. 3 [36 Cal.Rptr.3d 286] [taking judicial notice of a German court decision in relation to a forum non conveniens issue].)

argue the PRC action represents SMIC's attempt to evade important California public policies. Specifically, appellants complain the suit undermines state policies that favor the protection against tort liability for statements made in the course of litigation, the unavailability of tort remedies for breaches of contract,[8] and the enforcement of contractual choice-of-law provisions. Once again, however, the federal approaches described in the concurrence were not adopted by a majority of the Supreme Court. Indeed, the *Advanced Bionics* majority implicitly rejected the "policy evasion" rationale. Although "agree[ing] that California has a strong interest in protecting its employees from noncompetition agreements under [Business and Professions Code] section 16600," the court concluded this policy interest did not justify an injunction against the Minnesota proceedings. (*Advanced Bionics, supra,* 29 Cal.4th at pp. 706–707.) The court did not weigh the policy interest against other considerations or analyze evidence bearing upon whether the defendant was purposefully attempting to evade California's policy. Rather, the court simply observed that "[a] parallel action in a different state presents sovereignty concerns that compel California courts to use judicial restraint when determining whether they may properly issue a TRO against parties pursuing an action in a foreign jurisdiction." (*Id.* at p. 707.)

Even under the approach described in Justice Moreno's concurrence, the "evading public policy" justification for enjoining foreign proceedings has been construed narrowly. (*Advanced Bionics, supra,* 29 Cal.4th at p. 716 (conc. opn. of Moreno, J.); *Stonington Partners v. Lernout & Hauspie Speech* (3d Cir. 2002) 310 F.3d 118, 127.) The issue is not simply whether California has a strong public policy that is at odds with the foreign suit. Instead, the question is whether the foreign action was initiated for the purpose of *evading* California's public policy. (*Advanced Bionics, supra,* 29 Cal.4th at pp. 717–718 (conc. opn. of Moreno, J.).) "Such a purpose may be inferred, for example, if neither party has ties to the sister state in which a parallel suit has been initiated." (*Id.* at p. 717 (conc. opn. of Moreno, J.).) In this case, TSMC is a Taiwanese company and SMIC's headquarters are in Shanghai, in the PRC. "Courts have found that a party's connection to the foreign jurisdiction minimizes the possibility that such a suit was filed for purposes of evading the forum state's law." (*Ibid.*) In addition, both parties do substantial business with customers in mainland China, and the claims in the PRC action are directed against harm that allegedly occurred in China. Indeed, the trial court found that the evidence and witnesses relevant to SMIC's claims are located in the PRC. These facts weigh strongly against a

---

[8] The parties dispute whether claims in the PRC action are based on breaches of the Settlement Agreement and August 10 Agreement, and thus subject to California contract law under the agreements' choice-of-law provisions, or based on breaches of independent tort duties, and thus subject to PRC tort law. Under the trial court's order, the Beijing court will ultimately decide this issue.

finding that SMIC initiated the PRC action for the purpose of evading California's public policies. (See, e.g., *Gau Shan Co., Ltd. v. Bankers Trust Co.* (6th Cir. 1992) 956 F.2d 1349, 1357–1358 [concluding a suit filed in Hong Kong was not brought to evade the policies of Tennessee where one party was a Hong Kong corporation with assets located in Hong Kong].)

Just as the required showing of "purposeful evasion" is missing, so too is there an absence of evidence that PRC law differs in any material respect from the California policies appellants discuss. Even assuming Chinese law is contrary, however, appellants' policy arguments do not provide sufficient grounds for reversing the trial court's decision.

■ Codified in Civil Code section 47, subdivision (b), California's litigation privilege protects litigants from being subjected to tort liability for communications made in judicial or quasi-judicial proceedings, at least where the communications bear some "logical relation" to the litigation. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].) The privilege does not extend, however, to statements regarding the litigation made "to nonparticipants in the action [which] are thus actionable unless privileged on some other basis." (*Id.* at p. 219; *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1141–1142 [57 Cal.Rptr.2d 284] [rejecting argument that the litigation privilege extends to statements made in press conferences and press releases "trumpeting one party's version of a legal dispute"].)

Although TSMC would undoubtedly like to raise it as a defense, the litigation privilege appears to be inapplicable to SMIC's claims in the PRC action because this action complains of statements TSMC allegedly made to the Chinese public and to the media outside of any judicial proceedings. (See *Silberg v. Anderson, supra*, 50 Cal.3d at p. 219; *Rothman v. Jackson, supra*, 49 Cal.App.4th at pp. 1141–1142.) For example, the PRC complaint alleges TSMC made false and misleading statements to the press and public in the PRC suggesting its California claims had already been found true by a court of law, when no such finding had in fact been made. California's litigation privilege does not extend to such communications. Rather, litigants and attorneys "who wish to litigate their cases in the press do so at their own risk—that is to say, protected by the *First Amendment to the United States Constitution* and all principles which protect speech and expression generally, but without the mantle of an *absolute* immunity." (*Rothman v. Jackson, supra*, 49 Cal.App.4th at pp. 1148–1149, first italics added; see also *id.* at p. 1146 ["[p]ublic mudslinging, while a less physically destructive form of self-help than a public brawl, is nevertheless one of the kinds of unregulated and harmful feuding that courts and their processes exist to prevent"].)

■ Moreover, even if the Beijing court's ultimate decision might contradict the California public policy protecting statements made in the course of

litigation, this possibility does not so outweigh notions of judicial restraint and international comity as to require issuance of an antisuit injunction. "If any advantage in law was sufficient to justify application of the public policy exception, antisuit injunctions would become common and international comity a consideration of secondary importance. Procedural or substantive advantages offered by the forum law do not, of themselves, provide grounds for an antisuit injunction." (*Gau Shan Co., Ltd. v. Bankers Trust Co., supra,* 956 F.2d at p. 1357.)

For the same reason, we reject appellants' argument that permitting SMIC to pursue its PRC tort claims would violate California public policy against imposition of tort liability for breach of contract. The mere possibility that the Beijing court may someday make a ruling in the PRC action that contradicts California public policy does not constitute an exceptional circumstance sufficient to justify an injunction against pursuit of the foreign proceedings. (Cf. *Advanced Bionics, supra,* 29 Cal.4th at pp. 706–707 [possibility of a Minnesota ruling contrary to California's policy of protecting workers from noncompetition agreements did not outweigh the need for judicial restraint or justify an order restraining the Minnesota action].) Moreover, as the trial court noted, California law regarding the possibility of tort remedies for breach of contract is not entirely settled. For example, an open question exists regarding whether a wrongful action may constitute both a breach of contract and a tort, at least where, as SMIC maintains, an independent duty arising from principles of tort law is implicated. (*Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 102 [44 Cal.Rptr.2d 420, 900 P.2d 669] [conduct amounting to breach of contract becomes tortious only when it also violates " 'an independent duty arising from principles of tort law' "].) To predict that the Beijing court will issue a decision contrary to the remedies California recognizes for breach of contract would be speculative indeed.

Finally, consistent with the modern approach of section 187 of the Restatement Second of Conflict of Laws, California has a strong policy in favor of enforcing arm's-length contractual choice-of-law provisions. (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464–465 [11 Cal.Rptr.2d 330, 834 P.2d 1148].) The trial court expressed its belief that California law should apply to SMIC's claims in the PRC action because the claims arise out of or are related to the Settlement Agreement or the August 10 Agreement. However, based on considerations of comity and judicial restraint, and on the fact that the agreements permit selection of a non-California forum, the trial court deferred to the Beijing court to decide for itself which law to apply. The court expressed confidence that the Beijing court would review SMIC's claims against the relevant contracts and give appropriate weight to the parties' agreement on choice of law. This analysis is sound. The Beijing court has yet to decide which country's law will apply to claims asserted in the PRC action. Indeed, the court expressly declined to

reach this issue in the context of deciding TSMC's jurisdictional objections. In addition, evidence in the record indicates that, under Chinese civil laws, PRC courts will apply foreign law in matters involving foreign interests if the parties' contracts or other applicable laws dictate that foreign law governs a particular issue and application of foreign law would not violate the PRC's public interest. Consistent with the principles of judicial restraint and international comity, we must presume the Beijing court is capable of applying the appropriate law in the dispute before it. Appellants' speculation that the Beijing court might choose to apply Chinese law to SMIC's claims of defamation and unfair competition and that this choice might contradict the parties' choice-of-law agreements, thus violating the California policy in favor of enforcing such agreements, is far too tenuous to support an injunction against the foreign proceedings.

## D. *Enforcing Contractual Promise As to Choice of Law*

Finally, we turn to appellants' assertion that "[t]he trial court should have granted an antisuit injunction to remedy SMIC's breach of its promise not to seek the application of foreign law to disputes arising out of the parties' agreements." No California authority supports this argument that a trial court can, or should, enjoin foreign proceedings whenever they involve claims that may be governed by contractual choice-of-law provisions. Justice Brown remarked in a separate concurrence to *Advanced Bionics* that, "[i]f a careful choice-of-law analysis indicates that the foreign jurisdiction's law applies to the parties' dispute, . . . that fact weighs heavily in favor of permitting the foreign proceeding to go forward unimpeded." (*Advanced Bionics, supra,* 29 Cal.4th at p. 708 (conc. opn. of Brown, J.).) However, she did not suggest the reverse was true—i.e., that it would be appropriate to enjoin foreign proceedings if a choice-of-law analysis favored application of the forum's own law. More importantly, Justice Brown's view was not joined by any other member of the court. Although *Advanced Bionics* also involved a contract with a mandatory choice-of-law clause (*id.* at p. 701), the majority did not mention choice of law in its analysis and expressly declined to reach the question of which state's law applied to the dispute. (*Id.* at p. 708, fn. 6.) Justice Moreno went further, observing, "[t]he antisuit injunction case law does not involve a choice-of-law type of inquiry." (*Id.* at p. 718 (conc. opn. of Moreno, J.).)

We agree that a "choice-of-law analysis 'is simply not a good "fit" with the injunction context.' (*Stonington Partners v. Lernout & Hauspie Speech*[*, supra,*] 310 F.3d [at p.] 130.)" (*Biosense Webster, Inc. v. Superior Court, supra,* 135 Cal.App.4th at p. 838.) The federal cases appellants rely upon for their analysis are distinguishable, either because they construe a contract with a mandatory forum selection clause (e.g., *E. & J. Gallo Winery v. Andina*

*Licores S.A.* (9th Cir. 2006) 446 F.3d 984, 993; *Indosuez Internat. Finance, B.V. v. National Reserve Bank* (2003) 304 A.D.2d 429, 430–431 [758 N.Y.S.2d 308, 310–311]), or because they follow what Justice Moreno called the "liberal approach," which allows antisuit injunctions whenever duplicative proceedings would result in " ' "inequitable hardship" ' " or " ' "frustrat[ion] and delay . . . ." ' " (*Kaepa, Inc. v. Achilles Corp., supra,* 76 F.3d at p. 627; see also *Advanced Bionics, supra,* 29 Cal.4th at pp. 712–713 (conc. opn. of Moreno, J.) [citing *Kaepa* decision as an example of the liberal approach in some federal circuits].) California certainly has not followed the "liberal approach" to permitting antisuit injunctions. Indeed, based on the Supreme Court's *Advanced Bionics* decision, it is difficult to say whether contractual choice-of-law provisions are entitled to any weight whatsoever when a trial court is asked to enjoin parties from pursuing foreign proceedings.

### E. *Conclusion*

▮ Accordingly, consistent with the Supreme Court's admonition that an antisuit injunction should only be " ' rarely and sparingly employed' " (*Advanced Bionics, supra,* 29 Cal.4th at p. 705), we conclude the trial court appropriately denied appellants' motion to enjoin SMIC from pursuing its claims in the PRC action. "[A]n antisuit injunction conveys the message that 'the issuing court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility.' " (*Biosense Webster, Inc. v. Superior Court, supra,* 135 Cal.App.4th at p. 837, quoting *Gau Shan Co., Ltd. v. Bankers Trust Co., supra,* 956 F.2d at p. 1355.) Based on the record before us, it would be "pure[] speculati[on]" to assume the Beijing court is unable or unwilling to deciding the parties' dispute fairly and efficiently. (See *Biosense,* at p. 838.) Moreover, as was true in *Advanced Bionics,* the PRC action does not divest the trial court of jurisdiction: Appellants remain free to litigate this action unless and until SMIC establishes that a PRC judgment is binding with respect to the claims asserted here. (See *Advanced Bionics, supra,* 29 Cal.4th at p. 708.) If the Beijing court ultimately fails to provide TSMC with due process, as appellants fear, appellants can of course raise this fact in arguing a PRC judgment should not be binding in California. (*Beroiz v. Wahl* (2000) 84 Cal.App.4th 485, 494 [100 Cal.Rptr.2d 905] [" '[a] foreign judgment will be res judicata in an American court if it has that effect in its country of rendition, and if it meets the American standard of a fair trial before a court of competent jurisdiction' "]; see also *Laker Airways v. Sabena, Belgian World Airlines, supra,* 731 F.2d at p. 931 [noting that "[e]njoining participation in a foreign lawsuit in order to preempt a potential judgment is a much greater interference with an independent country's judicial processes" than refusing to enforce a judgment].)

## DISPOSITION

The order denying appellants' motion for an antisuit injunction is affirmed. Appellants shall bear costs on appeal.

Pollak, J., and Siggins, J., concurred.