[No. B184852. Second Dist., Div. Two. Jan. 17, 2006.]

BIOSENSE WEBSTER, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DEANA DOWELL et al., Real Parties in Interest.

COUNSEL

Alschuler Grossman Stein & Kahan, Mark A. Neubauer and Rebecca Edelson for Petitioner.

No appearance for Respondent.

Feldman Gale, James A. Gale, Todd M. Malynn and Michael J. Weber for Real Parties in Interest.

OPINION

**DOI TODD, Acting P. J.**—In these original proceedings, petitioner Biosense Webster, Inc. (Biosense) challenges a temporary restraining order (TRO) prohibiting it from commencing or taking any action to enforce any noncompetition agreement or restrictive covenant against three of its former employees in any court other than the Los Angeles County Superior Court or federal court in the State of California. We conclude that the TRO was improperly granted under both *Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697 [128 Cal.Rptr.2d 172, 59 P.3d 231] (*Advanced Bionics*) to the extent it enjoined sister-state actions, and United States Supreme Court precedent to the extent it enjoined federal actions outside California. We therefore grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Biosense, a California corporation with its principal place of business in California, manufactures and sells electrophysiology (EP) catheters and anatomical mapping devices. In 1999, Claudio Plaza was hired by Biosense and was eventually promoted to senior engineer developing EP catheters. In 2003 and 2004, Deana Dowell and Steven Chapman, respectively, were hired by Biosense as professional education specialists, educating physicians and their staff about the company's three-dimensional anatomical mapping system. Plaza and Dowell are lifelong residents of California, and Chapman has resided in California for more than 15 years.

Upon accepting employment, Dowell and Chapman signed an "Employee Secrecy, Non-Competition and Non-Solicitation Agreement" (Agreement).[1] The Agreement contained a covenant not to compete, providing that for 18 months after termination of employment the employees would "not render

---

[1] Plaza recalls signing documents as a condition of employment, but does not recall which version of a noncompetition agreement, if any, he may have signed.

services, directly or indirectly, to any.CONFLICTING ORGANIZATION" in which such services "could enhance the use or marketability of a CONFLICTING PRODUCT by application of CONFIDENTIAL INFORMATION" to which the employees had access during their employment. A conflicting product was defined as any product, process, technology, machine, invention or service which resembles or competes with one upon which the employee worked or of which the employee was knowledgeable as a result of employment. A conflicting organization was defined as a person or organization engaged or about to become engaged in research, development, production, marketing or selling of a conflicting product. The Agreement also provided that employees would "not disclose, use, disseminate, lecture upon or publish CONFIDENTIAL INFORMATION" while employed and for 18 months after employment. The Agreement included a choice-of-law provision: "This Agreement shall be interpreted according to the laws of the State of New Jersey without regard to the conflict of law rules thereof. I agree that any action relating to or arising out of this Agreement may be brought in the courts of the State of New Jersey or, if subject matter jurisdiction exists, in the United States District Court for the District of New Jersey. I consent to personal jurisdiction and venue in both such courts . . . ."[2]

In April and July 2005, Chapman and Dowell, respectively, accepted positions in California with a competitor of Biosense, St. Jude Medical S.C., Inc., doing business as United States Division (USD). In June 2005, Plaza accepted a position in California with Pacesetter, Inc. doing business as St. Jude Medical Cardiac Rhythm Management (Pacesetter). USD is a Minnesota corporation with a principal place of business in California, and Pacesetter is a Delaware corporation which also has a principal place of business in California.[3] USD and Pacesetter are subsidiaries of St. Jude Medical, Inc. (St. Jude), a Minnesota corporation with headquarters in Minnesota.

### The Cease-and-Desist Letter

By letter dated July 1, 2005, Biosense demanded that St. Jude cease its "unlawful raiding" of Biosense's employees, including Dowell, Chapman and Plaza. The letter stated that the former employees had covenants not to compete which precluded their employment with St. Jude and their use of Biosense's confidential and trade secret information about its business and personnel. The letter stated that to the extent St. Jude "cooperates in and benefits from" the former employees' breaches of their obligations to

---

[2] Biosense is a subsidiary of Johnson & Johnson, a New Jersey corporation with headquarters in New Jersey.

[3] Together with Dowell, Chapman and Plaza, USD and Pacesetter constitute the real parties in interest.

Biosense, it was exposing itself to tort liability, including claims for interference with contract, unfair competition and misappropriation of trade secrets. Biosense demanded that St. Jude provide "adequate assurances" that there would be no further raiding of its employees and agree that the named employees be transferred to positions not requiring their use of Biosense's confidential information. The letter further stated: "Receipt of the above assurances will hopefully help us to work towards a resolution of this matter regarding the employees without the need for any litigation. St. Jude Medical needs to understand, however, that Biosense Webster will pursue all rights and remedies it deems appropriate (including litigation) if this matter is not resolved to its satisfaction in the immediate future." The letter concluded: "We look forward to hearing from you within two weeks of the date of this letter in the hope that we can resolve this matter expeditiously and efficiently for all parties involved."

St. Jude received the letter on July 11, 2005, and on that day responded that it would need additional time to review the matter. On July 27, 2005, St. Jude faxed a letter to Biosense stating that as a result of Biosense's "threats" of litigation, St. Jude had considered it necessary to initiate litigation in California. St. Jude enclosed copies of (1) a complaint filed the previous day by real parties in interest against Biosense for declaratory relief[4] and unfair competition under Business and Professions Code sections 16600[5] and 17200,[6] and (2) a TRO and order to show cause (OSC) regarding a preliminary injunction that real parties in interest had obtained ex parte on the morning of July 27, 2005, without providing advance notice to Biosense.

### The TRO and OSC

The ex parte application for the TRO and OSC stated that "exigent circumstances" excused advance notice to Biosense because Biosense had "evidenced a clear intent to evade California's public policy against restraints of trade and California's unfair competition law governing its employment contracts by instituting litigation in a remote forum." Real parties in interest submitted copies of TRO's previously issued by the respondent court in three

---

[4] The complaint sought a declaratory judgment that the "restraints of trade" in the Agreement, including covenants not to compete and the choice-of-law provisions, were void; Dowell, Chapman and Plaza could work in their chosen professions; real parties in interest had not violated any contractual, statutory or common law duties to Biosense; and Biosense "may not evade California's sovereign authority to regulate trade in California by imposing choice-of-law or forum selection clauses in its employee agreements."

[5] Business and Professions Code section 16600 provides in pertinent part that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

[6] Business and Professions Code section 17200 defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice . . . ."

unrelated cases granting the same relief real parties in interest were seeking. Real parties in interest also presented the declarations of Dowell, Chapman and Plaza, who each stated that he or she left Biosense and joined St. Jude's subsidiaries for career advancement. They also stated they were not told by anyone at Biosense, either in their exit interviews or at any other time, that they could not work for USD or Pacesetter or that doing so was a breach of any obligation owed to Biosense.

The trial court granted the TRO enjoining Biosense and its agents from "[c]ommencing or taking any action other than in this court, the Superior Court of the State of California for the County of Los Angeles," to enforce any noncompetition agreement with Dowell, Chapman and Plaza, or to enforce any "restrictive covenant" in any agreement with Dowell, Chapman and Plaza "on the ground that they, or one or more of them, have in their possession or had 'access' to any trade secret, confidential or proprietary information belonging to Biosense or on any other ground." The court noted during the ex parte hearing that Biosense would "have a right to sue here in the federal court in L.A., and I don't intend to enjoin that, but I'm not going to change it to an order to that effect at this point." The court also issued the OSC, setting the matter for hearing on August 15, 2005.

*The Writ Petition*

On August 4, 2005, Biosense filed a petition for writ of mandate or prohibition in this court, seeking an immediate stay of all trial court proceedings. Biosense asserted three grounds for relief: (1) the TRO was issued ex parte without notice to Biosense in violation of its constitutional and statutory rights to notice; (2) the TRO violated the basic principles of comity and judicial restraint announced in *Advanced Bionics*; and (3) real parties in interest came to court seeking equity with unclean hands. The following day, the trial court granted the parties' request to continue the OSC hearing to August 31, 2005, and ordered the TRO to remain in effect until that date.

On August 19, 2005, this court ordered the hearing on the OSC. The order stated that it appeared the trial court had erred in issuing the TRO and setting the OSC hearing because "(1) the prospect that petitioners would institute litigation against real parties in interest does not constitute great or irreparable injury, immediate danger, or any other statutory basis for issuing a temporary restraining order without notice (Code Civ. Proc., § 527, subd. (c); Cal. Rules of Court, rule 379(g)); (2) the temporary restraining order is overbroad, restraining litigation in any and all federal courts; and (3) principles of judicial restraint and comity prohibit antisuit injunctive relief to restrain litigation in another state." The order gave notice under *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177–180 [203 Cal.Rptr.

626, 681 P.2d 893] (*Palma*) that this court was considering issuing a writ of mandate in the first instance unless the trial court vacated the TRO and OSC. In the event the trial court did not do so by August 26, 2005, the parties were directed to submit further briefing to this court.[7]

### *Subsequent Trial Court Proceedings*

On or about August 17, 2005, Biosense filed opposition to the OSC. On August 24, 2005, real parties in interest filed an ex parte application requesting the opportunity to file briefing in response to this court's *Palma* notice, and requesting the trial court to correct the TRO nunc pro tunc to permit the filing of an action in federal court in California, and to "clarify" the TRO to reflect certain findings. Biosense received notice of the ex parte application and appeared at the hearing, which lasted approximately 45 minutes. The court denied the application with respect to the requests for further briefing and for a clarification of findings, but granted the request to correct the TRO nunc pro tunc to permit the filing of an action in "any federal court in the State of California."[8]

### DISCUSSION

### A. *Standard of Review*

■ " 'The law is well settled that the decision to grant [a restraining order] rests in the sound discretion of the trial court.' (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121] . . . .) 'A trial court will be found to have abused its discretion only when it has " 'exceeded the bounds of reason or contravened the uncontradicted evidence.' " ' (*Ibid.*) 'Further, the burden rests with the party challenging the [trial court's order] to make a clear showing of an abuse of discretion.' (*Ibid.*)" (*Church of Christ in Hollywood v. Superior Court* (2002) 99 Cal.App.4th 1244, 1251 [121 Cal.Rptr.2d 810].) "Mandate lies to control judicial discretion when that discretion has been abused." (*State Farm etc. Ins. Co. v. Superior Court* (1956) 47 Cal.2d 428, 432 [304 P.2d 13]; see also *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695] ["Although mandamus does not generally lie to control the exercise of judicial discretion, the writ will issue 'where, under the facts, that discretion can be exercised in only one way' "].)

---

[7] Upon receipt of further briefing, we set the matter for oral argument.

[8] We grant real parties in interest's request to take judicial notice of the subsequent pleadings and proceedings in the trial court. We deny the request to take judicial notice of an unpublished order of the Supreme Court in *Advanced Bionics*.

### B. *Mootness*

Real parties in interest argue that in light of the trial court proceedings subsequent to the filing of the writ petition, the "writ petition directed to a TRO without notice is moot." Following our *Palma* notice, Biosense received notice of real parties in interest's August 24, 2005 ex parte application for correction of the TRO. At the outset of the 45-minute hearing, Biosense pointed out to the respondent court that it had filed a "lengthy" opposition to the OSC. The court stated that it had read the opposition and invited Biosense to "stress anything that you wish to stress." Biosense then proceeded to argue that the TRO should be vacated. The trial court rejected Biosense's arguments and continued the TRO in force, corrected nunc pro tunc to permit the filing of an action in federal court in the State of California.

 Because Biosense was given a full and fair opportunity to be heard on the merits of the TRO, we find that the issue of whether the TRO was improperly granted in the absence of notice is now moot. (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [244 Cal.Rptr. 581] [reviewing courts will decide only actual controversies and not questions that have become moot by subsequent acts or events].) However, because the writ petition raises challenges to the issuance of the TRO, that are separate and apart from the issue of notice, we find that the writ petition itself is not moot. "[T]he general rule governing mootness becomes subject to the case-recognized qualification that an appeal will not be dismissed where, despite the happening of the subsequent event, there remain material questions for the court's determination." (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717].)

### C. *Sister-state Actions*

We agree with Biosense that the TRO is "irreconcilable" with our Supreme Court's decision in *Advanced Bionics, supra,* 29 Cal.4th 697, 700, which held that a TRO enjoining a party in a California action from taking any action in a Minnesota proceeding involving the same dispute over a covenant not to compete was improper under principles of judicial restraint and comity.

In *Advanced Bionics*, Medtronic, Inc. (Medtronic), a Minnesota corporation with headquarters in Minnesota, hired Mark Stultz in Minnesota. Stultz signed an employee agreement containing a covenant not to compete and a Minnesota choice-of-law provision. (*Advanced Bionics, supra,* 29 Cal.4th at pp. 700–701.) Five years later, Stultz resigned from Medtronic and went to California to work for a competitor, Advanced Bionics Corporation (Advanced Bionics), a Delaware corporation with headquarters in California. (*Id.* at p. 701.) That same day, in Los Angeles County Superior Court, Stultz and

Advanced Bionics sued Medtronic for declaratory relief and unfair competition. They notified Medtronic that they intended to apply for a TRO enjoining Medtronic from taking any action in any other court to enforce its noncompetition agreement. (*Ibid.*) Medtronic removed the action to federal court and sued Stultz and Advanced Bionics in Minnesota state court. (*Id.* at pp. 701–702.) After the matter was remanded, the Minnesota court issued a TRO, and ultimately a preliminary injunction, precluding Advanced Bionics from hiring Stultz in any competitive role and barring both parties from taking any action or obtaining any order from any court that would interfere with the Minnesota court's determination of whether it should determine the claims in the Minnesota lawsuit. (*Id.* at p. 702.) Meanwhile, Stultz and Advanced Bionics obtained a TRO in the California action, prohibiting Medtronic from taking any further steps in the Minnesota action. (*Ibid.*) Thereafter, the Minnesota court directed Stultz and Advanced Bionics to move to vacate the TRO obtained in the California action, but that court refused to vacate its order. (*Id.* at p. 703.) Medtronic appealed from the TRO, and the Court of Appeal held that it was properly issued. (*Ibid.*) The Supreme Court reversed. (*Id.* at p. 708.)

■ Acknowledging that it was a case of first impression, the Supreme Court recognized that while California courts have the power to issue a TRO or antisuit injunction restraining proceedings in a sister state, "[t]he significant principles of judicial restraint and comity inform that we should use that power sparingly."[9] (*Advanced Bionics, supra,* 29 Cal.4th at p. 705.) The court noted that "the use of injunctive relief 'to prohibit a person from resorting to a foreign court is a power rarely and sparingly employed, for its exercise represents a challenge, albeit an indirect one, to the dignity and authority of that tribunal.' " (*Ibid.*) The court also noted that "potentially conflicting judgments naturally result from parallel proceedings but do not provide a reason for issuing a TRO." (*Id.* at p. 708.) The court concluded that "enjoining proceedings in another state requires an exceptional circumstance that outweighs the threat to judicial restraint and comity principles." (*Id.* at p. 708.) The court specifically rejected the argument that California's strong public policy against noncompetition agreements provided the exceptional circumstance warranting the TRO: "We agree that California has a strong

[9] The court defined "comity" as follows: "Comity is based on the belief ' " 'that the laws of a state have no force, *proprio vigore*, beyond its territorial limits, but the laws of one state are frequently permitted by the courtesy of another to operate in the latter for the promotion of justice, where neither that state nor its citizens will suffer any inconvenience from the application of the foreign law. This courtesy, or comity, is established, not only from motives of respect for the laws and institutions of the foreign countries, but from considerations of mutual utility and advantage.' " . . . "The mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the Constitution forbids." ' " (*Advanced Bionics, supra,* 29 Cal.4th at p. 707.) In his concurring opinion, Justice Moreno noted that courts have described comity as a " 'complex and elusive concept.' " (*Id.* at p. 710.)

interest in protecting its employees from noncompetition agreements under [Business and Professions Code] section 16600. But even assuming a California court might reasonably conclude that the contractual provision at issue here is void in this state, this policy interest does not, under these facts, justify issuance of a TRO against the parties in the Minnesota court proceedings." (*Id.* at pp. 706–707.) The court made clear that the Minnesota action did not divest California of jurisdiction and that Advanced Bionics remained free to litigate the California action. (*Ibid.*)

Real parties in interest argue that *Advanced Bionics* is distinguishable because here there was no other lawsuit pending when the TRO was issued. They claim that "the comity principles so crucial to the formulation of the court's 'exceptional circumstance' test have little if any relevance where there is no proceeding pending in another forum." We disagree. Judicial restraint and comity concerns are present whether a court is restraining a litigant from filing suit in a foreign court or from proceeding with an action already pending in another forum. (See, e.g., *Mahan v. Gunther* (1996) 278 Ill.App.3d 1108, 1116–1117 [663 N.E.2d 1139, 1144, 215 Ill.Dec. 625] ["While a court of equity has the power to restrain persons within its jurisdiction from instituting or proceeding with foreign actions, the exercise of such power is a matter of great delicacy and is to be invoked with great restraint in order to avoid distressing conflicts and reciprocal interference with jurisdiction"]; *Three Sisters Petroleum, Inc. v. Langley* (2002) 348 Ark. 167, 178 [72 S.W.3d 95, 103] ["The principle of comity requires that courts exercise the power to enjoin foreign suits sparingly. . . . This is particularly true where suit has already been brought in the foreign court"]; *Gau Shan Co., Ltd. v. Bankers Trust Co.* (6th Cir. 1992) 956 F.2d 1349, 1358 [holding that international comity precluded issuance of an antisuit injunction prohibiting the filing of a lawsuit in Hong Kong]; *Berkshire Furniture Co., Inc. v. Glattstein* (W.D.Ky. 1995) 921 F.Supp. 1559, 1561 [declining to issue injunction restraining prospective litigation in Malaysia under principles of comity].) The fact that there is no lawsuit pending in another state at the time an antisuit injunctive order is issued is merely a distinction without a difference that does not serve to render the principles announced in *Advanced Bionics* inapplicable. Instead, a court should focus on whether there is an "exceptional circumstance" to justify restraining out-of-state litigation and not on the procedural status of the foreign litigation. Any other approach would automatically deny a sister state the right to exercise its proper jurisdiction and would ignore the possibility that the sister state's law may ultimately apply to the dispute. As the court noted in *Gau Shan Co., Ltd. v. Bankers Trust Co., supra,* 956 F.2d at page 1355, an antisuit injunction conveys the message that "the issuing court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility."

Real parties in interest argue that even if *Advanced Bionics* is applicable, the "exceptional circumstance" test is satisfied here. In support, real parties in interest rely on the concurring opinions of Justice Moreno and Justice Brown. In his concurring opinion, Justice Moreno reviewed sister state as well as federal decisions addressing the issuance of antisuit injunctions and concluded that California courts should adopt a "restrictive approach," pursuant to which an antisuit injunction should only issue where necessary to protect the jurisdiction of the enjoining court or to prevent the litigant's evasion of the important public policies of the forum. (*Advanced Bionics, supra,* 29 Cal.4th at p. 714.) Real parties in interest argue that because all the parties here are California residents, any attempt by Biosense to sue its former employees in a jurisdiction outside California is nothing but an evasion of the important public policies of Business and Professions Code section 16600. But the majority in *Advanced Bionics* did not explicitly rely on the criteria set forth by Justice Moreno in determining that the TRO was improperly issued.[10]

Moreover, Biosense never definitively declared that it intended to sue the former employees in another jurisdiction nor disclosed why it might wish to proceed against them in another jurisdiction. Its cease-and-desist letter primarily threatened litigation against St. Jude, but did not mention any particular forum. At the August 24, 2005 ex parte hearing, counsel for Biosense suggested that Biosense might wish to proceed in Minnesota against St. Jude for contractual interference, an action Biosense believed would violate the TRO. On appeal, Biosense's reply brief states that besides California "there are multiple other jurisdiction[s] with ties and interests." The apparent reason a litigant "chooses to file suit in a foreign jurisdiction is, of course, relevant to the question [of] whether important public policies are offended." (*Gau Shan Co., Ltd. v. Bankers Trust Co., supra,* 956 F.2d at p. 1358.) Thus, even if it were appropriate for us to engage in the type of analysis urged by real parties in interest, at this early stage of the proceedings, and upon the record before us, such an analysis would be purely speculative.

█ We also note that the majority in *Advanced Bionics* did not engage in the choice-of-law analysis suggested by Justice Brown in her concurring opinion. Indeed, the majority expressly declined to reach the choice-of-law issue. (*Advanced Bionics, supra,* 29 Cal.4th at p. 708, fn. 6.) A choice-of-law analysis "is simply not a good 'fit' with the injunction context." (*Stonington Partners v. Lernout & Hauspie Speech* (3rd Cir. 2002) 310 F.3d 118, 130.) This is particularly true where another forum has not been selected.

---

[10] In her concurring opinion, Justice Brown ventured that the majority's opinion "gives insufficient guidance to lower courts." (*Advanced Bionics, supra,* 29 Cal.4th at p. 708.)

■ In sum, we conclude that the *Advanced Bionics* exceptional circumstance test is applicable whether a TRO or antisuit injunction seeks to restrain pending litigation or the filing of an action in a foreign court. At this stage of the proceedings, no exceptional circumstance has been demonstrated that outweighs the threat to principles of judicial restraint and comity. The trial court therefore abused its discretion in issuing the TRO.

## D. *Federal Actions*

■ We also agree that the TRO is improper to the extent it restrains the filing or prosecution of any action in federal court outside of California. In a trilogy of cases, the United States Supreme Court has made clear that state courts are without power to enjoin the commencement or prosecution of in personam actions in federal court. In *Donovan v. City of Dallas* (1964) 377 U.S. 408, 412–413 [12 L.Ed.2d 409, 84 S.Ct. 1579], the court noted "the old and well-established judicially declared rule" that "state courts are completely without power to restrain federal-court proceedings in in personam actions." In *General Atomic Co. v. Felter* (1977) 434 U.S. 12 [54 L.Ed.2d 199, 98 S.Ct. 76], the court found that a state court's antisuit injunction directly conflicted with *Donovan* and the supremacy clause of the United States Constitution. (*General Atomic, supra,* 434 U.S. at p. 15.) The court noted that the holding in *Donovan* "was premised on the fact that the right to litigate in federal court is granted by Congress and, consequently, 'cannot be taken away by the State.' " (*Id.* at p. 16.) The court expressly rejected the argument that *Donovan* only precluded state courts from enjoining pending federal litigation but permitted state-court injunctions against the filing of additional suits in federal court. The court stated: "It is therefore clear from *Donovan* that the rights conferred by Congress to bring *in personam* actions in federal courts are not subject to abridgment by state-court injunctions, regardless of whether the federal litigation is pending or prospective." (*General Atomic, supra,* 434 U.S. at p. 17.) In *General Atomic Co. v. Felter* (1978) 436 U.S. 493, 497 [56 L.Ed.2d 480, 98 S.Ct. 1939], the court reaffirmed that a state court was "without power under the United States Constitution to interfere" with efforts by a litigant to obtain arbitration in federal forums since a party "has an absolute right to present its claims to federal forums." Accordingly, the TRO at issue here is also void to the extent that it precludes the filing of an action in any federal forum.[11]

---

[11] In light of our conclusion, we need not address Biosense's unclean-hands argument.

## DISPOSITION

Let a writ of mandate issue, directing the respondent court to vacate its TRO. The stay of the hearing on the OSC is dissolved. Petitioner to recover its costs.

Ashmann-Gerst, J., and Chavez, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied April 19, 2006, S141414.