Filed 3/4/14  P. v. O'Neal CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>DAVID JOHN O'NEAL,<br><br>  Defendant and Appellant. | B241850<br><br>(Los Angeles County<br>Super. Ct. No. KA096751) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Jack Hunt and Tia G. Fisher, Judges.  Affirmed but remanded with directions.

Sarvenaz Bahar, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

David John O'Neal (O'Neal) appeals from the judgment on his conviction of unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) (count 1) and receiving stolen property (Pen. Code, § 496d, subd. (a)) (count 2).[1] He contends: (1) the trial court violated his constitutional right to self-representation when it ruled that he could not represent himself unless he agreed that there would be no continuances and he would proceed to trial in six days; (2) the trial court abused its discretion by refusing to continue the trial so that he could prepare his defense; (3) the trial court abused its discretion when it refused to reappoint his public defender in the middle of jury selection; (4) the trial court erred when it ruled that the prosecution had established that he suffered a prior strike conviction; and (5) the trial court erred in calculating the actual custody and good conduct credits.

The People concede that there was insufficient evidence to prove the prior strike conviction, and also that the custody and good conduct credits must be sent back to the trial court for a redetermination. We remand the matter to the trial court for a new trial on the prior strike conviction and for a redetermination of the presentence credits in light of section 4019 and *People v. Bruner* (1995) 9 Cal.4th 1178 (*Bruner*). In all other respects, the judgment is affirmed.

## FACTS

### Initial Proceedings; the Allegations

On March 7, 2012, the parties appeared for a preliminary hearing. Judge Jack Hunt held O'Neal to answer.

The Los Angeles District Attorney's Office filed an information alleging unlawful driving or taking of a vehicle and receiving stolen property, and also alleged that O'Neal had suffered two prior convictions for which he served prison terms within the meaning of section 667.5, subdivision (b). At arraignment, O'Neal was represented by Deputy Public Defender Lashae Henderson (DPD Henderson). O'Neal pleaded not guilty and denied all special allegations. The prosecutor amended the information to allege that

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

O'Neal had suffered a prior serious or violent felony conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).[2]

**O'Neal's May 1, 2012, *Faretta*[3] Motion to Represent Himself**

On Tuesday, May 1, 2012, DPD Henderson announced ready. When the prosecutor asked to trail the matter until the following Monday, DPD Henderson stated, "Then, your honor, my client is requesting to continue the matter a month to hire private counsel. And if that is denied, he wants to go pro per and he has the form." Judge Hunt asked O'Neal if he would be ready to go to trial on Monday. He said he needed three weeks, two at the most, for his family to save up enough money to hire a lawyer. Judge Hunt refused to continue the trail, stating, "This case goes back to February. Jury trial Monday, May 7." In response, O'Neal stated, "Well, then I will go pro per and I will be ready to go." When Judge Hunt pointedly asked if O'Neal would be ready, he said, "I'm going to have to be." Judge Hunt stated, "Yes, you're going to have to be. Don't come in here on Monday and say you want a continuance. It's denied. So let your conscience be your guide." Subsequently, he admonished O'Neal that representing himself was unwise and he would probably lose. O'Neal told Judge Hunt that DPD Henderson "ain't doing me no good" because he had asked her to file motions on his behalf and she had refused.

O'Neal was reminded that there was a plea deal of 32 months on the table, and that if he went to trial he was facing an exposure of eight years. At that point, O'Neal had DPD Henderson ask for a change of venue. Judge Hunt denied the motion. The ruling prompted O'Neal to explain that a deputy district attorney who had previously appeared in the case and that deputy district attorney's family knew O'Neal and his family. O'Neal argued that there was a "conflict of interest." Once again, Judge Hunt denied the motion, stating "you have been talking to the brain trust back in the lockup."

---

**2**     Specifically, it was alleged that O'Neal committed bank robbery on July 16, 1990, and was convicted in federal court.

**3**     *Faretta v. California* (1995) 422 U.S. 806 (*Faretta*).

According to O'Neal, he had been "reading law books." After a morning recess, O'Neal informed the trial court that he had read the pro. per. form and *Faretta* waiver. But he had not filled them out because the clerk "said that was his copy."

When the parties reconvened in the afternoon, O'Neal stated that he had reviewed and completed the pro. per. form and *Faretta* waiver. Judge Hunt tried, yet another time, to warn O'Neal that representing himself was not in his best interest. He replied: "I feel I have a better chance representing myself than the public defender." He added that "they ain't trying to do what I am asking" and that representing himself was "a chance I got to take[.]" At that point, Judge Hunt granted O'Neal's *Faretta* motion.

Judge Hunt informed O'Neal that "your trial is Monday, May 7[, 2012]" and ensured that O'Neal was provided with all the relevant discovery. Henry Bastien was appointed as standby counsel.

**O'Neal's Request for a Continuance on the Day of Trial**

On Monday, May 7, 2012, the parties appeared for trial before Judge Tia G. Fisher. When O'Neal requested a continuance, Judge Fisher stated that she had ordered a jury panel and wanted to know why a continuance was necessary. O'Neal stated: "Because I just went pro per on Wednesday. They sent me to . . . a pro per module. I didn't get my auxiliary funds. I needed time to look into my case so I could fight it properly. I [had] only been there less than five days." He added that he wanted to hire an investigator.

Judge Fisher stated that she had contacted Judge Hunt and understood that O'Neal had been allowed to represent himself because he agreed he would be ready for trial on May 7, 2012, and there would be no continuances. O'Neal acknowledged as much, but stated that he did not receive his auxiliary funds and added: "I thought I would be able to postpone it so I could look into my case." Judge Fisher explained that O'Neal's position did not make any sense given that he had agreed to Judge Hunt's condition for pro. per. status.

With Judge Fisher's permission, O'Neal filed a motion to obtain auxiliary funds and the appointment of an investigator, and a motion for formal discovery. He asserted,

4

inter alia, that he needed a private investigator so that he could "put on an adequate defense [and] . . . gather exculpatory evidence, [and] interview potential witnesses[] and alleged victims."

Judge Fisher explained that there was "no need for formal discovery" due to the "informal discovery." She asked the prosecutor who the witnesses were, and he replied: "Most of them are law enforcement. We have three civilian witnesses because it's a state car. So they were the ones responsible for the vehicle." He explained that the civilian witnesses would "say they were the ones that had control over the vehicle at the time it was stolen."

O'Neal was asked what he wanted to know that he did not already know, and he stated: "I feel I didn't get all my motion discovery. I even got at the house a paper saying I was never charged with the case and I was released. That was never given to me in my motion. Because I was arrested for receiving stolen property then one of the detectives let me go with the paper saying I was never charged because he wanted me to tell him who stole the truck. And I was released two, three days after I was arrested. I got that paper at the house but it was never given to me." After a short colloquy with Judge Fisher, O'Neal added: "So I feel I didn't get all my motions when I asked for them. There's a lot of stuff missing out of it. Because they said they had a voice recording of me talking to officers."

Judge Fisher asked the prosecutor about the recording. He stated that an investigator taped his interview with O'Neal. Turning her focus to O'Neal, Judge Fisher asked if he received "some things" from DPD Henderson. O'Neal said that he received "them" from the bailiff. However, he said, "I don't feel everything was there."

After looking at the "motions," Judge Fisher stated that she was "satisfied that discovery has been complied with." To the degree O'Neal's motion for formal discovery sought citizen complaints against officers, it was denied because it was untimely and lacked good cause. Judge Fisher stated that the motion to obtain an investigator was not timely. Then, also based on a lack of timeliness, she denied the motion for a continuance.

5

Still pleading his case, O'Neal stated: "But I figured I would have had time in the pro per module."

Judge Fisher offered O'Neal the following thoughts. ". . . [W]hen I'm looking at this and making this determination, I evaluate everything very carefully in terms of your due process rights, in terms of . . . weighing and balancing the right to go pro per. But when you raised that issue and asked for it, it was not particularly timely and so it makes sense that the judge says, 'If you are going to be ready to go, fine. But if you're not, then I'm not going to grant it.' And it put a court in a bind. It's not really fair in terms of the overall administration of justice and it appears to be game playing. That's the reality of it. When you come in here, you come back today and say, 'I really didn't mean what I said. I really want a continuance now. I'm really not ready. I just said that so I could get what I wanted.' Game playing. And game playing with the administration of justice isn't going to be tolerated. Jurors were ordered. They're in the hall. Thirty people are missing work or coming in here taking the time and energy to come in here and be on this trial for you and the People."

Continuing on, Judge Fisher said that it was "game playing, if you tell the judge one thing and then three, four days later say, 'I really didn't mean that. I really just wanted to go pro per. I figured I would get my continuance.' Right?" In response, O'Neal said: "That seems fair."

**O'Neal's Request for Reappointment of DPD Henderson.**

Judge Fisher brought in prospective jurors and the parties engaged in voir dire for the rest of the morning.

Once the parties returned from a lunch break, O'Neal stipulated that a particular juror could be excused because the juror could not speak English. Following the stipulation, Judge Fisher explained to O'Neal the procedure by which he could challenge jurors. She then stated: "I [am] assuming you don't want your public defender back; is that correct?" O'Neal said he wanted to be represented by DPD Henderson if he could get her back, explaining, "I wasn't able to prepare anything and she already knows the case[.]"

Judge Fisher stated: ". . . I must confess to being kind of mystified only because I was [not] down there in the calendar court but you've told me that you went pro per because you thought you would get time." O'Neal said: "Exactly." Judge Fisher rejoined: "Even though the judge told you that you were going to have to be prepared and that was the only reason the judge let you go pro per and you told the judge you were going to be prepared[?]" O'Neal said, "Yes," but then explained that he thought he was going to have time to go to the law library during the week and prepare his "paperwork." When Judge Fisher pointed out that O'Neal had filed motions, he replied that "[s]omebody down in the tier did that for me." Judge Fisher asked: "What were you going to do in the law library[?]" O'Neal stated: "Look up on the computer stuff, look for motions and stuff so I could file them and go through all my paperwork. I didn't have time to do none of that."

Judge Fisher said it looked like O'Neal was playing games. After O'Neal was questioned further, he revealed that he originally wanted to be pro. per. because DPD Henderson would not file a motion for a change of venue based on a conflict of interest with a deputy district attorney who was no longer working on the case, nor would she file a motion for a continuance so that O'Neal's family could hire a private lawyer. O'Neal said he also went pro. per. "[b]ecause I thought [DPD Henderson] wasn't trying to help me. She kept trying to tell me to take the deal. She wasn't actually trying to fight for me."

Judge Fisher called DPD Henderson into court and asked whether she would accept a reappointment. She said she would accept reappointment only if the jury panel was discharged and the trial started over. Based on that, Judge Fisher declined to reappoint DPD Henderson.

**Prosecution Evidence During the First Phase of Trial**

A white Dodge Ram 2500 pickup truck (Dodge Ram) was stolen from a lot at the California Department of General Services over the Veteran's Day weekend in mid-November 2011. Several weeks later, on November 30, 2011, two deputies from the Los Angeles County Sheriff's Department, Tim Nakamura and Andrew Cruz, were

driving in a marked patrol vehicle and saw the Dodge Ram. O'Neal was sitting behind the wheel with the driver's door open. As the deputies approached in their patrol vehicle, O'Neal got out of the Dodge Ram and walked away. Deputy Nakamura and Deputy Cruz looked inside the Dodge Ram and saw that the cover to the steering column was missing, which exposed wires, and there was a screwdriver in the ignition. After checking the license plate number and vehicle identification number, they ascertained that the Dodge Ram had been reported stolen.

O'Neal was detained and searched. The deputies recovered a cell phone from O'Neal right front pocket. It contained a series of text messages indicating O'Neal's guilt.

On November 27, 2011, at 7:03 p.m., O'Neal sent a text asking the recipient, "know anybody who wants a hot Dodge Ram truck. Late 90's early 2000's." On November 29, 2011, O'Neal texted: "I'll be there in a while. [¶] . . . I can't get this truck going. Ignition is fucking up. It broke. Have to figure out how to get it going." On November 29, 2011, at 10:41 a.m., he sent the following text: "Find out if the person you were talking about wants the truck." At 4:08 p.m., he texted, "I have the truck sit[ting] here waiting for you. I can't keep it parked here for too long on my street. Let me know what's up. If you want it or not." Then, at 4:14 p.m., he texted: "You asked your people about the truck yet? Let me know as soon as possible. I don't want to have it for too long. And yes, you get a little some-some out of it if you help me get rid of it."

On November 30, 2011, at 11:27 a.m., O'Neal texted: "You know anybody who might want to buy a Dodge Ram 2500-Magnum V10 truck year 2000? It even has the rotation back on the bed. Oh yeah, it's a G-ride. 400. Good condition." Later, at 11:32 a.m., he sent this message: "Well, I have a few people lined up. I have it parked on my street. If I get rid of it today, I'll look out for you, okay. I'll buy you something and send gas money—send gas money to you. Sound like a plan." A few minutes later, at 11:37 a.m., he texted: "I'm going to make a few calls and probably take it to a shop on Valley right before you get on 605 freeway. [¶] . . . I'll let you know what happens. Wish me luck." Ten minutes later, at 11:47 a.m., he sent the following message:

8

"What's up, Big Dave? I need you to let me know as soon as you can what's up on the truck. I need money so I got to get rid of it." At 11:51 a.m., O'Neal texted: "You need to wake up, Cora. What's up on the truck situation?" At 12:06 p.m., he sent this text: "Find out if any one want to buy a G-ride, year 2000, Dodge Ram, 2500-Magnum V10 truck with wrought iron rack. 400. Might go lower."

A later text message on November 30, 2011, from "Kiki" asked, "What kind of truck do you have?" O'Neal's texted back: "2000 Dodge Ram 2500 Magnum, V-10 and it's got the rack on the bed." He had a message from Tina/Sunshine a little later, stating, "No, just wait. [¶] . . . If you want, I'll be back in 20 minutes. At parent conferences. Do you have a ride?" In response, O'Neal wrote, "Yeah, a stolen truck that I'm in right now that I really don't want to be driving. But [yeah], I got a ride, sort of, kind of, in a way."

One of the People's witnesses read the text messages and opined that O'Neal had been trying to sell the Dodge Ram for $400.

**Verdict; Second Phase of Trial; Sentence**

The jury returned a guilty verdict. O'Neal waived his right to a jury trial on whether he had priors. After the bifurcated second phase of trial, Judge Fisher found the alleged priors to be true.[4]

O'Neal was sentenced to a total term of six years in state prison computed as follows. For the offense of unlawful driving or taking of a vehicle, he was sentenced to a mid-term of two years doubled pursuant to sections 667, subdivisions (b) through (i), and 1170.12, subdivisions (a) through (d). He was then given an additional two years

---

[4]    The People offered a federal prison packet into evidence. It contained a judgment and probation/commitment order stating that O'Neal had been convicted of "robbery of bank; robbery of Savings and Loan Association, in violation of 18 U.S.C. § 2113(a) as charged in count one of the Indictment." A 1996 probation report filed in connection with a petty theft provided a description of the bank robbery purportedly taken from "federal files." Judge Fisher relied on that probation report in finding the strike allegation true.

pursuant to section 667.5, subdivision (b). A four-year sentence for the offense of receiving stolen property was imposed but stayed.

Judge Fisher awarded O'Neal 86 days actual custody credit and 42 days good time credit for a total of 128 days of presentence custody credit.

This timely appeal followed.

## DISCUSSION

**I. The Ruling on the May 1, 2012, *Faretta* Motion.**

O'Neal contends that his right to self-representation was violated when it was conditioned on the trial not being continued.

We disagree.

If defendant knowingly and intelligently waives the right to counsel, he has a constitutional right to conduct his own defense. (*Faretta, supra,* 422 U.S. at pp. 835–836; *People v. Lightsey* (2012) 54 Cal.4th 668, 694–695.) This right is unconditional if the "defendant makes an unequivocal assertion of that right within a reasonable time prior to trial. [Citation.]" (*People v. Wilkins* (1990) 225 Cal.App.3d 299, 303 (*Wilkins*), citing *People v. Windham* (1977) 19 Cal.3d 121, 127–128 ["in order to invoke the constitutionally mandated unconditional right of self-representation[,] a defendant in a criminal trial should make an unequivocal assertion of that right within a reasonable time prior to the commencement of trial"].) When a defendant's *Faretta* motion "is made on the eve of trial and is therefore untimely, the grant or denial of that request is within the sound discretion of the trial court after it has inquired sua sponte into the specific factors underlying the request. [Citation.]" (*Wilkins*, *supra*, 225 Cal.App.3d at p. 304; *People v. Douglas* (1995) 36 Cal.App.4th 1681, 1688–1689 (*Douglas*) ["Motions made on the day preceding or the day of trial have been considered untimely"].) "[I]f a court grants a defendant's untimely *Faretta* request, it must also grant a reasonable continuance, if necessary, so that defendant may prepare for trial. [Citations.]" (*Id*. at p. 1689.) But "if the court determines the defendant's request is merely a tactic designed to delay the trial, the court has the discretion to deny the continuance and require the defendant to proceed to trial as scheduled either with his counsel or in propria persona. [Citations.]" (*Ibid.*,

cited with approval by *People v. Valdez* (2004) 32 Cal.4th 73, 103 ["[T]he court acted within its discretion in concluding that defendant could represent himself only if he was ready to proceed to trial without delay"].)

Whether a *Faretta* motion is timely depends on the totality of the circumstances that existed at the time that the trial court was asked to rule. (*People v. Lynch* (2010) 50 Cal.4th 693, 724 (*Lynch*), overruled on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 636–643.) The purpose of the timeliness rule is to prevent a defendant from using a *Faretta* motion to obtain an unjustifiable delay of the trial or obstruct the orderly administration of justice. (*Lynch*, *supra*, 50 Cal.4th at p. 724.) "[A] trial court may consider the totality of the circumstances in determining whether a defendant's pretrial motion for self-representation is timely. Thus, a trial court properly considers not only the time between the motion and the scheduled trial date, but also such factors as whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation." (*Id*. at p. 726.)

The record reveals that O'Neal was represented by DPD Henderson at the March 21, 2012, hearing scheduled for arraignment and could have made his *Faretta* motion at that time. He chose not to. When the parties appeared on Tuesday, May 1, 2012, DPD Henderson announced ready. Only after the prosecutor asked to trail the matter until Monday, May 7, 2012, did O'Neal ask to continue the matter a month so he could hire a private attorney. In the alternative, O'Neal made a *Faretta* motion. No one indicated that there were ongoing pretrial matters. There were only six days between the day the motion was filed and the trial date. Notably, in *People v. Hill* (1983) 148 Cal.App.3d 744, 757 (*Hill*), the court stated that a *Faretta* motion filed five days before the trial date could have been denied as untimely. Though O'Neal's case was not complex—it involved unlawful use of a vehicle—O'Neal did not make his *Faretta* motion sufficiently in advance of the original May 1, 2012, trial date to research and understand the issues he would face when trial commenced. Considering the totality of

11

the circumstances, we conclude that Judge Hunt did not err when he impliedly concluded that the *Faretta* motion was untimely.

The next question is whether Judge Hunt erred when he conditioned O'Neal's pro. per. status on the trial proceeding without a continuance. We take our cue from *Douglas*. The *Douglas* court concluded that the trial court did not abuse its discretion when, on the day trial was scheduled to begin, it ruled that it would allow the defendant to represent himself only if there was no continuance. At "no point did [the defendant] claim he and his counsel had not cooperated in preparing his defense or that they disagreed. [Citation.]" (*Douglas*, *supra*, 36 Cal.App.4th at p. 1689.) Here, O'Neal never claimed lack of cooperation or disagreement with DPD Henderson about the defense. At most, O'Neal claimed that DPD Henderson did not file unspecified motions. But it appears that she did make the motions O'Neal was concerned about when, at the May 1, 2012, hearing, she orally made motions for a change of venue and a continuance. The *Douglas* court noted: "From the record it appears, as the trial court concluded, [the defendant] requested a continuance strictly as a delaying tactic and not because he needed time to prepare a defense." (*Id*. at p. 1689.) Here, Judge Hunt impliedly found that O'Neal's *Faretta* motion was a delaying tactic, and that finding is amply supported by the record. When the prosecutor stated that she wanted to trail the matter to Monday, O'Neal asked for a continuance so his family could obtain the services of a private attorney. Only in the alternative did O'Neal ask to represent himself. He did not state that he needed more time so that he could file motions, hire an investigator, review evidence or learn the law.

We additionally observe that the record of the May 1, 2012, hearing suggests that O'Neal sought a continuance with the hope that he would have a private attorney by the time of trial. As explained in *Hill*, "the granting of an untimely request to discharge appointed counsel does not entitle a defendant to a continuance to allow a different attorney of his choice to prepare for trial. [Citations.]" (*Hill*, *supra*, 148 Cal.App.3d at p. 757, fn. 5.) Of course, O'Neal did not file a motion to discharge DPD Henderson pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. However, O'Neal expressed

12

dissatisfaction with DPD Henderson on May 1, 2012, and it is apparent from the record that his dissatisfaction was the primary prompt for his *Faretta* motion. Given his motivation, he should not be allowed to achieve a result under *Faretta* that is proscribed under *Marsden*.

## II. The Ruling on the May 7, 2012, Motion to Continue the Trial.

Even if Judge Hunt did not err, O'Neal contends that Judge Fisher erred by not countermanding Judge Hunt's May 1, 2012, order regarding O'Neal's pro. per. status and granting a continuance. This contention lacks merit. Whether to continue a trial is committed to a trial judge's sound discretion. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.) Judge Fisher simply enforced Judge Hunt's May 1, 2012, order denying any continuances, and for that reasons it cannot possibly be said that Judge Fisher exceeded the bounds of reason. (*Biosense Webster, Inc. v. Superior Court* (2006) 135 Cal.App.4th 827, 834.) Further, O'Neal admitted that he thought he could postpone the trial even though he agreed to Judge Hunt's condition that there be no continuances. Thus, there was support for Judge Fisher's finding that O'Neal was playing games. Judge Fisher inquired why O'Neal needed a continuance, and he essentially said he wanted to obtain discovery. At that point, Judge Fisher examined the discovery and concluded that O'Neal had been given all the evidence. Consequently, O'Neal's stated reason for needing a continuance evaporated. For this additional reason, Judge Fisher did not err when she denied a continuance.

## III. The Ruling on O'Neal's Request for the Reappointment of DPD Henderson.

O'Neal argues that Judge Fisher erred when she failed to reappoint DPD Henderson. Upon review, we cannot concur.

When a defendant seeks to revoke his pro. per. status and have counsel appointed, a trial court must analyze the totality of the circumstances when exercising its discretion to grant the defendant's request. (*People v. Lawrence* (2009) 46 Cal.4th 186, 192–193, 196 (*Lawrence*).) Some of the factors that may be considered, as set forth in *People v. Elliott* (1977) 70 Cal.App.3d 984, 993–994, are: "(1) [a] defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-

representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney." (*Ibid.*) A trial court need not review each factor on the record, and no one factor is controlling. (*Lawrence*, *supra*, 46 Cal.4th at p. 196 ["The standard is whether the court's decision was an abuse of its discretion under the totality of the circumstances . . . . , not whether the court correctly listed the factors or whether any one factor should have been weighed more heavily in the balance"].)

Judge Fisher conducted an extensive hearing on O'Neal's request while two witnesses and the jury panel were waiting. She observed that if DPD Henderson was reappointed and the trial was started anew, the jury panel would be lost and the matter would have to be returned to the master calendar court. Though O'Neal explained that he wanted DPD Henderson back because he "wasn't able to prepare anything and she already knows the case[,]" the case was not complicated. The only issues were whether he unlawfully took a vehicle, and whether he received that vehicle knowing that it was stolen. Impliedly, Judge Fisher concluded that O'Neal would be effective acting as his own counsel. The record establishes that he filed motions and otherwise appeared sufficiently intelligent to defend himself. In addition, the record established that O'Neal had been playing games with the court, admitting that he believed he would get a continuance after agreeing there would be no continuances. Given the totality of the circumstances, Judge Fisher acted well within her discretion when she declined to discharge the jury panel, restart the trial and reappoint DPD Henderson to represent O'Neal.

## IV. The Finding that O'Neal Suffered a Prior Strike.

The parties agree that the prosecution failed to offer sufficient and/or admissible evidence establishing that O'Neal's 1990 conviction in federal court for bank robbery qualified as a robbery under section 211, and that it therefore qualified as a strike under sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b) through (i).

However, they disagree on the remedy. According to O'Neal, Judge Fisher should not have doubled the mid-term sentence of two years on count 1, and his six-year sentence should be reduced to four years. The People, on the other hand, contend that the matter should be remanded to the trial court so that it can be retried.

Regarding the remedy, we agree with the People. Both the United States Supreme Court and the California Supreme Court have held that the prohibitions against double jeopardy do not apply to proceedings in noncapital cases to determine the truth of prior conviction allegations, sentencing enhancements, or penalty allegations. (*Monge v. California* (1998) 524 U.S. 721, 734; *People v. Seel* (2004) 34 Cal.4th 535, 542; *People v. Barragan* (2004) 32 Cal.4th 236, 240–242.) Thus, retrial of an alleged prior conviction is permissible. (*Id*. at p. 241.)

**V. Custody Credits.**

The sentencing hearing was held on June 8, 2012. The record established that O'Neal had been in custody since February 14, 2012. Judge Fisher awarded O'Neal a total of 128 days of presentence credit consisting of 86 actual days and 42 days of good conduct credit.

According to O'Neal, Judge Fisher erred by failing to properly award good conduct credit pursuant to the current version of section 4019, subdivision (f). The People agree. O'Neal committed his crimes on November 30, 2011, which was after the effective date of Assembly Bill No. 109, which was part of the criminal justice realignment legislation. (*People v. Garcia* (2012) 209 Cal.App.4th 530, 539.) "Assembly Bill No. 109 authorized conduct credit for *all local prisoners* at the rate of two days for every two days spent in local presentence custody." (*Ibid*.; § 4019, subd. (f).) Thus, under the current law, O'Neal should have received two days for every two days he spent in actual custody.

Next, O'Neal argues that Judge Fisher failed to accurately calculate his actual days of presentence custody. Instead of 86 day, he contends that it should have been 118 days because he was in custody from November 30 to December 2, 2011, and then from February 14 to June 8, 2012.

15

There is a wrinkle.  The record indicates that while the present case was pending, O'Neal was on probation for driving with a suspended or revoked driver's license in case No. ORI01262.  The March 21, 2012, hearing was not only for O'Neal's arraignment in the present case, it was also a probation revocation hearing.  Regarding the latter, Judge Hunt stated:  "Probation revoked.  120 days county jail [to run] consecutive to any other sentence.  [¶]  And there's another one for suspended or revoked license.  Probation is revoked.  120 days county jail to run consecutive to any other sentence."[5]  She then told DPD Henderson, "You explain to your client he's no longer getting credit on the felony. He gets sentenced because he'll be a sentenced prisoner."  The parties dispute the impact of the sentence in case No. ORI01262.  O'Neal opines that because the record shows that he was not awarded any presentence custody credit in case No. ORI01262 and did not start serving his sentence in that case until after being sentenced in the current case, he should be given full credit for his actual days in custody prior to sentencing on June 8, 2012.  He asserts that the issue need not be remanded.  The People, on the other hand, argue that the case should be remanded for a determination under *Bruner* as to whether O'Neal's probation in case No. ORI01262 was revoked because of his current offenses. (*Bruner*, *supra*, 9 Cal.4th at pp. 1193–1195 [under section 2900.5, a convicted defendant shall receive credit for all days spent in custody, but only to the extent that the custody to be credited is attributable to proceedings related to the same conduct for which the defendant was convicted].)

The record is insufficient for us to determine why O'Neal's probation was revoked, and also when he began serving his 120 day sentence.  The matter must be remanded for a redetermination of O'Neal's actual days of credit and, additionally, his good conduct credits.

---

[5]     It is unclear from the record what Judge Fisher meant when she said there is "another one" and revoked probation a second time.

16

**DISPOSITION**

That matter is remanded for a retrial on the strike conviction, and for a redetermination of presentence credits in light of section 4019 and *Bruner*. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
               ASHMANN-GERST


We concur:


_____, P. J.
     BOREN


_____, J.[*]
     FERNS

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.