[Sac. No. 2564.    In Bank.—December 22, 1916.]

## S. KATO et al., Petitioners, v. CHARLES O. BUSICK, as Judge of the Superior Court of Sacramento County, et al., Respondents.

RECEIVER — HARVESTING GROWING CROP TAKEN UNDER ATTACHMENT—STIPULATION AUTHORIZING RECEIVER TO ACT — PROHIBITION — MOOT QUESTION.—Where a receiver had been appointed, at the instance of the plaintiff in an attachment suit, to harvest, sell, and account for a growing crop that had been seized under the attachment, and thereafter all the parties interested in the property, including third-party claimants, entered into a stipulation authorizing the receiver to

harvest the crops and dispose of the proceeds in the manner provided therein, and the receiver acted accordingly and was discharged, the question of the legality of the original appointment of the receiver becomes a moot one, and will not be determined in a proceeding for prohibition instituted by the third-party claimants prior to the stipulation, notwithstanding that document reserved the right to question the appointment.

MOTION to dismiss a petition for a Writ of Prohibition.

The facts are stated in the opinion of the court.

Louis Dunkley, for Petitioners.

Thomas B. Leeper, for Respondents.

Fred J. Harris, for Receiver.

MELVIN, J.—Respondents moved to dismiss a petition for a writ of prohibition upon the grounds that the receiver against whom the writ was asked had been discharged as such receiver; that the harvesting of the crop which petitioners asked to have prevented had been accomplished and the proceeds distributed to the proper parties; that petitioners had consented to the continuation of the receivership; that the matter involved in the receivership proceeding had been fully settled and terminated, and that the whole controversy had become a moot question.

It appears without contradiction that on December 10, 1915, M. Itoo commenced in the superior court of the county of Sacramento an action against M. Yamane, C. Nagasue, and R. Koike. An attachment was issued and the sheriff levied upon a certain growing crop of onions in San Joaquin County. Subsequently, Kato, for himself and as agent for one Wakamoto and Toshi Koike (the last named being the wife of R. Koike), filed a third-party claim. The sheriff thereupon demanded and Itoo, the plaintiff, at once deposited one thousand one hundred dollars for the sheriff's protection against said third-party claim. The plaintiff subsequently made a motion for the appointment of a receiver to harvest, sell, and account for the crop of onions. The motion was granted; one M. P. Barnes was appointed and qualified as receiver, and the sheriff put him in possession of the crop. At the time the receiver was appointed the sheriff had refused to take the

responsibility of harvesting the crop, and the third-party claimants had refused to gather the onions while the attachment was in existence.

The third-party claimants, S. Kato, Y. Wakamoto, and Toshi Koike (wife of R. Koike), petitioned this court for a writ of prohibition, and an order to show cause why such writ should not issue was made. The matter was argued and is still pending. On August 9, 1916, before the return day fixed by the order to show cause the attorneys for the receiver, the plaintiff, and the third-party claimants respectively entered into a stipulation reciting the facts that Kato claimed forty per cent, and Mrs. Koike and Wakamoto each thirty per cent, of the crop held by the receiver and agreeing that the receiver should harvest, market, and sell the crop as in said order provided and should pay the money received, after subtracting the costs of harvesting, etc., as follows: Forty per cent to Kato, thirty per cent to Wakamoto, and thirty per cent, the amount claimed by Mrs. Koike, to some bank on deposit to abide the order of the superior court in the matter of the receivership. The stipulation contained the following paragraph:

"It is distinctly understood that this stipulation shall in no event or under any circumstances be construed or taken as a consent to the appointment of said receiver by the parties hereto, or that they waive any legal right to appeal from or move to set aside said order appointing said receiver, and that the parties hereto reserve the right to take any steps that they may be advised to contest or oppose said order appointing said receiver, and this stipulation is entered into with the express purpose of facilitating the harvesting of said crop of onions."

Under this stipulation the receiver proceeded to gather and sell the crop.

R. Koike filed a petition in bankruptcy and on August 19, 1916, the Hon. M. T. Dooling, judge of the district court of the United States, made an order staying proceedings in the case of *Itoo* v. *R. Koike et al.*, and on the 28th of the same month this order was modified in such manner as to continue Mr. Barnes as receiver in the harvesting and marketing of the crop. The order also required him to turn over the assets to Mr. William T. Hawkins, referee in bankruptcy, and to file his account of such receivership with the said referee.

On September 25, 1916, Judge Busick made and entered an order, as judge of the superior court of the state of California, in and for the county of Sacramento, approving the receiver's report. This order recited that as authorized by stipulation of all the parties claiming to own the property the receiver had released and surrendered all of it except the interest owned by R. Koike; that the receiver had $1,160.32 on hand belonging to said Koike, and that both court and receiver had been served with an order of the district court of the United States which has been described above. The court ratified the conduct of the receiver in releasing all of the property except the Koike interest; ordered him to turn over the remaining assets in his hands to the referee in bankruptcy, and decreed that upon so surrendering said assets he should be discharged as receiver and his bond should be exonerated. On the 27th of September, 1916, another order was made and signed by Judge Busick reciting the receiver's due obedience to the former order and formally releasing him from any further liability.

From the foregoing facts it is evident that no good reason exists for deciding whether or not the original appointment of the receiver was justified. It is contended that no stipulation could invest the receiver with jurisdiction to act if the court was originally without such jurisdiction. This is true, but nevertheless the stipulation was broad enough to make the receiver the agent for the third-party claimants. The paragraph, which we have quoted, reserving the right to question the receiver's authority, does not in the slightest degree detract from his right to gather and sell the crop under the stipulation. He did everything except deposit the share claimed by Mrs. Koike in bank, and that he could not do because it was impounded by the federal court. If this money belongs to Mrs. Koike she may recover it from that court. The issuance of a writ of prohibition now by this court would accomplish nothing. It would merely require the receiver to desist from gathering and selling the crop and from dealing with the assets. But he has gathered the crop, has accounted for the assets, and he and the court have lost all control of the subject matter of the receivership.

The contention is made that under the authority of *Havemeyer* v. *Superior Court,* 84 Cal. 327–389, [18 Am. St. Rep. 192, 10 L. R. A. 627, 24 Pac. 121], it makes no difference that

the property has passed out of the possession of both court and receiver—that the writ should issue, and that this court may not take cognizance of the payment of the money claimed by Mrs. Koike into the district court of the United States. The citation does not support the contention. The court there merely held that, although the writ does not run against ministerial officers, and although the property was in the custody of the receiver, the possession of the receiver was that of the court, he being a mere instrument of that tribunal. It was accordingly decided that the writ of prohibition runs to the court and operates directly upon the court but indirectly upon the receiver. In the case at bar there is no property in the custody of the court and no receiver against whom the writ could operate. The questions raised by the petition are therefore moot questions and the petition for the writ should be and accordingly is dismissed.

Lorigan, J., Sloss, J., Henshaw, J., and Angellotti, C. J., concurred.