Filed 11/7/14  Gaggero v. Pacific Coast Management CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| STEPHEN M. GAGGERO,<br><br>    Plaintiff;<br><br>PACIFIC COAST MANAGEMENT, INC. et al.,<br><br>    Appellants,<br><br>    v.<br><br>KNAPP, PETERSEN & CLARKE et al.,<br><br>    Defendants and Respondents. | B245114<br><br>(Los Angeles County<br>Super. Ct. No. BC286925) |

APPEAL from an order of the Superior Court for the County of Los Angeles. Robert L. Hess, Judge.  Affirmed.

Law Offices of Edward A. Hoffman and Edward A. Hoffman for Appellants.

Miller, Randall A. Miller and Steven S. Wang for Defendants and Respondents.

_____

## SUMMARY

In May 2010, we affirmed a judgment against plaintiff Stephen M. Gaggero in a malpractice lawsuit he brought against defendants Knapp, Petersen & Clarke and several of its principals. (*Gaggero v. Knapp, Petersen & Clarke* (May 6, 2010, B207567) [nonpub. opn.] (*Gaggero I*).) The judgment included an attorney fee award of more than $1.2 million. In a separate opinion filed today, we have affirmed an order granting defendants' motion to add seven entities and the trustee of three trusts as additional judgment debtors to the judgment. (*Gaggero v. Knapp, Petersen & Clarke* (Nov. 7, 2014, B241675) [nonpub. opn.] (*Gaggero II* or the alter ego case).)

After the trial court issued orders appointing a receiver and assigning financial rights to defendants, several of the additional judgment debtors satisfied the judgment. Additional judgment debtors now appeal from the orders appointing the receiver and from the assignment orders. We affirm the orders.

## FACTS

We have described the genesis and development of this litigation in *Gaggero II*, filed simultaneously with this opinion, and will not repeat it here except as needed to understand the current appeal. In a nutshell: Plaintiff is a real estate developer who, years ago, under the tutelage of estate lawyer Joseph Praske, devised an "estate plan" under which he transferred his personal assets, then amounting to some $35 or $40 million, to limited partnerships and limited liability companies, and then transferred those entities to three trusts, with Mr. Praske as trustee. This had the effect, he believed, of denuding him of all his personal assets and insulating him from the necessity of paying his judgment creditors. We concluded otherwise in *Gaggero II*, affirming the trial court's finding that the trustee of the three trusts and the seven entities that comprised the trust assets were plaintiff's alter egos and were liable for the judgment.

A few weeks after the trial court amended the judgment to include the additional judgment debtors, defendants took plaintiff's debtor exam. Plaintiff testified that, since the judgment was entered against him, he has never had the resources to pay it. In his answers to demands for documents relating to his three trusts and the rest of the estate

2

plan, he said (in addition to objecting to them all) that he was "unable to comply" because he had no documents, and that the trustee of the trusts (whom we have found to be his alter ego) had possession of the documents and refused to provide them to him.

On July 30, 2012, two months after the trial court amended the judgment, defendants filed two motions, one asking the court to appoint a receiver to enforce the judgment, and the other asking the court to assign the judgment debtors' rights to receive monies from third parties to defendants (and restraining them from transferring or changing the right to payment). Defendants argued, among other things, that plaintiff, along with trustee Praske and counsel, "have done nothing but delay, obstruct, and abuse the discovery process to thwart [defendants'] enforcement efforts" on the judgment.

Various procedural developments followed.

Additional judgment debtors filed a supersedeas petition in the alter ego case, and on August 6, 2012, we issued a stay of proceedings in the trial court to enforce the judgment against additional judgment debtors. The stay was lifted and the petition denied on August 30, 2012.

Also on August 6, the trial court entered a third amended judgment, adding postjudgment enforcement costs and accrued interest (as of July 13, 2012) to the judgment, bringing it to $2,178,235.51.

The next day, the trial court took the receivership and assignment motions off calendar as to additional judgment debtors because of the stay. The motions remained on calendar as to plaintiff, and the court ruled that if the stay were lifted, it would consider hearing the motions on shortened notice as to additional judgment debtors.

On August 23, 2012, the trial court heard the receivership and assignment motions as to plaintiff. There was no appearance by additional judgment debtors. The court indicated its tentative ruling was to grant the motions, and plaintiff was given a week to submit objections to defendants' nomination of Jay Adkisson to serve as the receiver. The court, after a discussion of the proposed assignment order, said, "Well, that's the order," but then said that the court would "re-review" the proposed order. (Counsel had

3

prepared the proposed orders before the stay was issued, and the court observed there were "certain judgment debtors as to whom the proceedings are presently [stayed] . . . .")

On September 6, 2012, after the stay was lifted, defendants filed a second set of receivership and assignment motions, this time directed against the additional judgment debtors, for hearing on October 3, 2012.

On September 13, 2012, the trial court entered an order granting defendants' motion for appointment of a receiver, and appointing Mr. Adkisson as the receiver of the judgment debtors. The order was based on defendants' proposed order prepared for the August 23 hearing, with interlineations by the court. The order named both plaintiff and the additional judgment debtors. The order stated (in the court's handwriting) that the court was "aware that the Temporary Stay Order issued by the Court of Appeals was vacated on 8/30/2012." The court also signed the assignment order, directed at plaintiff and additional judgment debtors, again stating the court was aware the stay had been vacated. The assignment order assigned the judgment debtors' rights to payments due or to become due from third parties to defendants "until the payment of the judgment in the amount of $2,178,235.51 plus post-judgment interest and allowable costs is paid in full."

On September 20, 2012, additional judgment debtors filed their opposition to defendants' second set of receivership and assignment motions, including objections to the proposed order for appointment of a receiver and evidentiary objections.

On October 3, 2012, all parties appeared through counsel at the hearing, as did the receiver. Additional judgment debtors filed last-minute declarations about their willingness to sell one of their properties, and their counsel explained they were willing and able to pay the judgment but needed time to sell assets or borrow money; they were "serious about trying to get this worked out without being subjected to a receivership." The trial court viewed this offer as "kind of vague, kind of conceptual, and what it does is promise significant additional delay." The record also reflects some confusion about whether the receivership and assignment orders the court entered on September 13 applied to additional judgment debtors. The court thought they did, but counsel for both sides pointed out that additional judgment debtors did not participate in the August 23

4

hearing and had had no opportunity to be heard. The parties then discussed additional judgment debtors' objections, and the court took the matter under submission.

Later the same day, the court signed and filed (1) an "Amended Order for the Appointment of Receiver" and (2) a "Reissued Order for Assignment of Rights and Order Restraining Judgment Debtors." The amended receivership order stated that the motion was heard on August 23 as to plaintiff and on October 3 as to the remaining judgment debtors; required the judgment debtors to post an undertaking to stay enforcement of the order; appointed Mr. Adkisson as the receiver and ordered that any bond and oath previously posted would stand. The reissued assignment order recited that the defendants' motion was heard on both dates, assigned the judgment debtors' rights to present and future payments to defendants until payment of the judgment in full, enjoined judgment debtors from disposing of any rights subject to the order, and required an undertaking to stay its enforcement.

On November 5, 2012, one month later, the receiver applied ex parte for instructions and authorization to approve a financing transaction arranged by four of the additional judgment debtors that would allow them to pay the judgment in full. After extensive discussion, the court signed a modified version of the proposed order, authorizing the receiver to facilitate the transaction, which involved borrowing against the equity in real properties to pay existing loans and converting equity into cash to satisfy the judgment. The receiver was to receive the funds necessary to satisfy the judgment, plus $30,000 to cover his fees and expenses; pay defendants; authorize the escrow holder to file a satisfaction of judgment executed by defendants; and file a final accounting.

Shortly thereafter, the transaction was completed. An acknowledgement of full satisfaction of the judgment was recorded in Los Angeles County on November 14, 2012, and filed with the trial court on December 3, 2012. On April 12, 2013, the trial court

5

approved the receiver's final accounting, discharged the receiver and terminated the receivership.[1]

Meanwhile, on November 13, 2012, additional judgment debtors appealed from the receivership and assignment orders the court made on September 13, 2012. On December 3, 2012, they appealed from the amended receivership order and reissued assignment order the court made on October 3, 2012.

## DISCUSSION

### 1. Preliminary Motions

The entry of the receivership and assignment orders had the desired effect. As mentioned above, the judgment was satisfied, the receiver made his final accounting, and the trial court discharged the receiver and terminated the receivership.

Then, after the record was filed in this case, defendants moved to dismiss the appeal as moot, arguing that we cannot grant any effective relief. They point out the assignment order has expired by its own terms, and in *Kato v. Busick* (1916) 174 Cal. 118, the court held that where there was no property in the custody of the court and no receiver against whom a writ could operate, the questions raised by a writ petition were moot, and "no good reason exists for deciding whether or not the original appointment of the receiver was justified." (*Id.* at pp. 121, 122.)

While the argument has some force, we conclude we must decide the appeal.

"Appellate courts generally will not review matters that are moot." (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 78.) A matter is moot if the reviewing court's decision " ' "can have no practical impact" ' " or where " ' "no effective relief" ' " can be granted. (*Ibid.*) "An appeal will be decided, however, where part but not all of the controversy has been rendered moot." (*Ibid.*)

---

[1]     We grant defendants' motion for judicial notice of these three documents, which were filed after the entry of the September 13 and October 3, 2012 orders that are the subject of this appeal.

Here, additional judgment debtors point out that a ruling in their favor would entitle them to recover the $30,000 they paid in receiver's fees, as well as a substantial sum in attorney fees and costs defendants were later awarded in connection with their assignment and receivership motions. Under these circumstances, we cannot say that an appellate ruling on the orders will have "no practical impact," and so we conclude the appeal is not moot.

## 2. The Merits of the Appeal

The court may appoint a receiver "[a]fter judgment, to carry the judgment into effect." (Code Civ. Proc., § 564, subd. (b)(3).) Under section 708.620, the court may appoint a receiver to enforce a judgment "where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment." The availability of other remedies " 'does not, in and of itself, preclude the use of a receivership. [Citation.] Rather, a trial court must consider the availability and efficacy of other remedies in determining whether to employ the extraordinary remedy of a receivership. [Citation.]' [Citation.]" (*Gold v. Gold* (2003) 114 Cal.App.4th 791, 807.) "In appeals from orders appointing receivers, just as in other cases, the appellant must show injury as well as error . . . ." (*Snidow v. Hill* (1948) 84 Cal.App.2d 702, 708.) We review a trial court's decision to appoint a receiver for abuse of discretion. (*Gold v. Gold, supra,* at pp. 807-808.)

Upon application by a judgment creditor, the court may order a judgment debtor to assign to the judgment creditor "all or part of a right to payment due or to become due, whether or not the right is conditioned on future developments . . . ." (Code Civ. Proc., § 708.510, subd. (a).) In determining whether to order an assignment, "the court may take into consideration all relevant factors . . . ." (*Id.*, subd. (c).) The judgment creditor "may apply to the court for an order restraining the judgment debtor from assigning or otherwise disposing of the right to payment that is sought to be assigned." (§ 708.520, subd. (a).) The court may issue an order restraining the judgment debtor "upon a showing of need for the order." (*Id.*, subd. (b).) Restraining orders are reviewed for

7

abuse of discretion. (E.g., *Biosense Webster, Inc. v. Superior Court* (2006) 135 Cal.App.4th 827, 834 [temporary restraining order].)

Additional judgment debtors raise a host of reasons they say justify reversal of the receivership and assignment orders. None of them has merit.

### a. Procedural claims

Additional judgment debtors first contend the September 13 orders violated this court's August 6 temporary stay (which was vacated on August 30) and are void. This is so, they say, because the trial court held a hearing on the matter on August 23, and they had no notice and opportunity to be heard at that hearing, because of the stay. These arguments are based on the fact that the September 13 orders were directed at them as well as plaintiff, even though it was clear the August 23 hearing involved only plaintiff.

While there was some confusion surrounding the trial court's intent in the September 13 orders, that makes no difference because any error or irregularity in those orders did not prejudice anyone. The court entered and issued amended orders on October 3, after additional judgment debtors had a full opportunity to be heard on the issues. In short, it simply does not matter whether the September 13 orders were void or not; the only pertinent orders are those the court made on October 3.

Additional judgment debtors claim, however, they did not have a full opportunity to be heard on October 3, because the court had already made up its mind on September 13. They contend the court did not give them a chance to meaningfully oppose the motions and, since the court apparently thought it had already decided the motions as to additional judgment debtors on September 13, "[b]y definition, the court was prejudiced against [them] when they tried to make their case." They say the court denied them their due process rights "because it quite literally never gave them a chance to persuade it before it made up its mind."

We do not agree with this view of the record of proceedings of October 3. Initially, the court appeared to believe its September 13 orders applied to additional judgment debtors as well as to plaintiff. But counsel for defendants then explained to the court that the additional judgment debtors "didn't have a chance to oppose [the previous

8

orders], so we've refiled the same motions." The court then heard further argument on the objections additional judgment debtors had to the proposed receivership order. Moreover, the court had already heard, at considerable length, the arguments counsel made about why they should be permitted to pursue their proposal for resolving the matter without being subjected to a receivership. Indeed, the trial court entertained declarations on that subject that additional judgment debtors filed on the day of the hearing. On this record, there is no basis for their claim they did not receive "a fair hearing before an impartial judge" on October 3.

In a related argument, additional judgment debtors assert the court "demonstrated bias" against them because it ruled on the receivership and assignment orders based on plaintiff's previous conduct over the course of several years, rather than judging them "by their own actions since entering the case" and "giving them a chance to prove themselves." They contend they were given "no opportunity whatsoever to show their good faith" and should have been given the chance to pay the judgment before being placed into receivership and subjected to an assignment order.

This claim is meritless, as it does not take account of the fact that the trial court previously found that additional judgment debtors and plaintiff are alter egos, a conclusion we affirm today in *Gaggero II.* The evidence in that case showed that additional judgment debtors are controlled by plaintiff to serve his own ends, one of which was to place his personal assets beyond the reach of legitimate creditors. The evidence showed plaintiff had control over Mr. Praske and over the assets of the three trusts and all of the entities owned by them, including "[b]uying and selling, financing, trading, everything." (*Gaggero II, supra,* B241675 at p. 6.) Consequently, it was entirely proper for the trial court to decide that receivership and assignment orders were appropriate, and necessary, based on plaintiff's lengthy history of stonewalling and refusing to pay legitimate judgments against him. This was not, in any way, shape or form, "bias" against additional judgment debtors.

### b.     Sufficiency of the evidence

Additional judgment debtors contend the evidence was insufficient to support the orders appointing a receiver and the assignment order.  They say defendants did not seek any lesser remedies, and additional judgment debtors did not defy any court orders, did not refuse to answer any discovery, and had done "nothing remotely improper."

Again, this ignores the trial court's earlier finding and the supporting evidence that plaintiff dominates and controls the additional judgment debtors, using the trusts that own the other additional judgment debtors as his own personal piggybank.  Thus the insistence by additional judgment debtors that trustee Praske himself was never asked to and never refused to produce any documents (and therefore additional judgment debtors should be treated as though they have nothing to do with plaintiff's litigation conduct and are writing on a clean slate) is meritless.  On the contrary, as we concluded in *Gaggero II*, it was eminently reasonable for the trial court to infer that Mr. Praske was complicit in plaintiff's refusal to produce any documents relating to the trusts or any other part of plaintiff's estate plan.  (Indeed, as we have noted above, plaintiff's most recent refusal to produce trust or estate plan documents asserts that Mr. Praske has them and has refused to provide them to plaintiff.)  Consequently, the extensive arguments the additional judgment debtors make about their *bona fides* and their claims that plaintiff's conduct "had nothing to do with [additional judgment debtors]" are entirely divorced from reality.

The evidence was more than sufficient to justify the appointment of a receiver as well as the assignment order.  The trial court was cognizant of all the evidence relating to the alter ego status of plaintiff and additional judgment debtors, and had presided over the underlying malpractice case as well.  As a consequence, the court was intimately familiar with plaintiff's long history of unremitting efforts to avoid paying his legitimate creditors.  The trial court's comments at the October 3 hearing demonstrate exactly why the receivership order was a "reasonable method to obtain the fair and orderly satisfaction of the judgment" and why no lesser remedies would do.  A few examples:

"I understand the [judgment] debtor discovery was taken from Mr. Gaggero sort of kicking and screaming, you know, with great reluctance.  But aside from that, . . . this

10

case goes back several years . . . . And basically Mr. Gaggero has, as far as I can see, taken the stonewall position as far as paying this [judgment]. [¶] [T]o say that he has resisted any effort to either, number one, pay sums that were owed prior to [judgment], or to pay it once the [judgment] was entered is an understatement of the case. [¶] So, you know, . . . it's been worse [than] trying to pull teeth without anesthetic for the creditors."

And, when counsel said that additional judgment debtors "haven't had a chance to show that we have been able to participate responsibly in this case," the court replied: "Well, the problem is that Mr. Gaggero has been less than forthcoming. I read the transcript of the [judgment] debtor examination where he refused to say where he lives and refused to give information that was perfectly appropriate. [¶] . . . [¶] . . . And, frankly, my general understanding is that this web of entities was set up by Mr. Gaggero in consultation with various people essentially to make him judgment proof. . . . I think there is evidence that has been presented to that effect, and indeed I have some recollection of Mr. Gaggero's own testimony at trial."

Consequently, when counsel asked to continue the hearing to give additional judgment debtors a chance "to make that sale [of one of their properties] happen," the court refused, pointing out that, "on the basis of what I have before me today, I do not have a high degree of confidence that will happen within a reasonable period of time." The court aptly described the offer to sell a property "a theoretical offer which has not yet been reduced to anything that would be enforceable." The court concluded: "And I know the history of Mr. Gaggero on that. He doesn't want to pay [judgments] against him . . . . [¶] . . . It's hard for me to say that given this history, given my understanding of the facts, given my understanding of the relationship between Mr. Gaggero and these different persons and entities [(additional judgment debtors)], that that [the receivership and assignment] shouldn't [be] allow[ed] to go forward."

In short, as the trial court's comments make clear, the record fully supports the conclusion that the appointment of a receiver was "a reasonable method to obtain the fair and orderly satisfaction of the judgment" (Code Civ. Proc., § 708.620); that the

11

assignment order was necessary; and that plaintiff's stonewalling tactics could properly be attributed to additional judgment debtors in light of their alter ego relationship.

### c. The scope and terms of the receivership order

Additional judgment debtors argue that, even if the court was justified in imposing a receivership, the terms of the order were excessive and oppressive. They object to numerous provisions, first challenging the receiver's authority "to administer and manage all of Alter Ego Judgment Debtors' business affairs, funds, assets, choses in action and any of its other property . . . ." They also object to the receiver's authority to "[i]nvestigate all of the Judgment Debtors' assets and liabilities including . . . the nature and extent of any . . . involvement with . . . any business entities, corporations, partnerships or joint ventures involved with Judgment Debtors, and any litigation." They object to the receiver's authority to "request and receive tax returns," and they ask us to hold that a receiver cannot have authority to access attorney-client communications (even though the order says nothing on this subject). And they say it was unreasonable to require them to turn over possession of all " 'financial books, records and ownership documents' " relating to assets and liabilities within seven court days of the appointment.

None of these objections to the scope of the order has merit. The only "authority" additional judgment debtors cite for the claim that a receiver cannot be authorized to "manage all [their] business affairs" is *Tucker v. Fontes* (1945) 70 Cal.App.2d 768, 775, where the court was quoting the defendant's argument based on a treatise of unknown date. Additional judgment debtors object to a host of other provisions, apparently on the same ground, saying they are "precisely the powers a receiver *may not* have . . . ." But they offer no legal authority or argument specifying why these powers should be found improper. In their reply brief, additional judgment debtors concede that "there is no formal bar on ordering a receiver to manage a business," and they "apologize for the error." They merely state, without elaboration, that the order was not justified here. That is not a sufficient basis for reversing the order.

The same is true of the claim that the receiver's power to "[i]nvestigate" was improper. Additional judgment debtors again cite no authority, and it seems clear that the

12

receiver's duty to marshal assets to satisfy the judgment would necessarily require an investigation by the receiver to find the necessary assets. (See Code Civ. Proc., § 568 ["The receiver has . . . power . . . to take and keep possession of the property, to receive rents, collect debts, to compound for and compromise the same, to make transfers, and generally to do such acts respecting the property as the court may authorize."].)

Nor do any of the other objections to the scope of the order merit reversal. We have found the appointment of a receiver was proper. There is nothing to be gained at this stage, after the receivership has been terminated and the receiver discharged, in considering on appeal provisions never used by the receiver.

### d. The scope of the assignment order

Additional judgment debtors similarly contend the assignment orders were "wildly improper," were "designed to prevent [them] from paying their lawyers," and assigned payments they "would otherwise have made to various entities and individuals, most of whom were not parties." They cite to the provisions assigning to defendants the rights to monies due or to become due that were "*held in the name of or for the benefit of or accessible to* JUDGMENT DEBTORS that [were] in the possession, control, custody, *or due to*" specified individuals, including Mr. Praske, plaintiff, various lawyers and others. We fail to see any impropriety, and additional judgment debtors cite no legal authorities supporting their contentions. Nor do they demonstrate any prejudice resulting from any of these provisions.

Finally, additional judgment debtors complain that defendants' notice of motion did not mention they were seeking an order restraining additional judgment debtors from disposing of any rights subject to the assignment order, and therefore the restraints "exceeded the court's jurisdiction and are void." The memorandum accompanying defendants' motion expressly discussed the court's authority to restrain the judgment debtors and the need for a restraining order. The suggestion that additional judgment debtors were "not alert[ed]" to "the nature of the order being sought" is specious.

13

**DISPOSITION**

The orders are affirmed.  Defendants shall recover their costs on appeal.

GRIMES, J.

We concur:

RUBIN, Acting P. J.

FLIER, J.